**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Daniel E. PIPES, Defendant–Appellant.**

No. 95–6199.

United States Court of Appeals,
Sixth Circuit.

Argued June 13, 1996.

Decided July 2, 1996.

Michael E. Winck, Asst. U.S. Attorney (argued and briefed), Knoxville, TN, for Plaintiff-Appellee.

Douglas A. Trant (argued and briefed), Knoxville, TN, for Defendant-Appellant.

Before: KENNEDY and CONTIE, Circuit Judges, and GRAHAM, District Judge.*

KENNEDY, Circuit Judge.

Defendant pled guilty to conspiracy to possess with intent to distribute marijuana while reserving his right to appeal the District Court's denial of his suppression motion. Defendant argues that his conviction should not stand because Tennessee law enforcement officers' violation of a state law requiring prior judicial approval before seized marijuana may be used in a reverse sting operation violated his due process rights. For the following reasons, we affirm.

I

Defendant was arrested in Roane County, Tennessee on December 1, 1993 while purchasing forty-two pounds of marijuana from an undercover special agent with the Tennessee Bureau of Investigation. The Federal Bureau of Investigation had joined the investigation as of November 30, 1993. Part of the marijuana used in the reverse sting operation came from the Nashville Metro Narcotics Department, in Davidson County, and part came from the Tennessee Bureau of Investigation. The law enforcement officers had not received judicial approval before using the marijuana obtained from Davidson County.

On December 2, 1993, defendant was indicted for attempting to possess with intent to distribute marijuana and conspiring to possess with intent to distribute. Defendant entered into a plea agreement with the United States under which he would plead guilty to count two of the indictment, the conspira-

cy count, while retaining the right to appeal the denial of his motion to suppress. This appeal followed.

II

Defendant raises two arguments on appeal. First, defendant claims that the Tennessee officers' violation of TENN.CODE ANN. § 53–11–451(d)(4) (1991), which requires prior judicial approval before seized contraband may be used in a reverse sting operation, violates due process. Second, defendant claims that since Tennessee exercised its powers under the Tenth Amendment to the United States Constitution when it required prior judicial approval for the use of confiscated contraband in reverse sting operations, the United States cannot violate this state requirement when prosecuting federal crimes.

A

■ Defendant first argues that the Tennessee officers' violation of a Tennessee regulation regarding use of confiscated contraband was so outrageous as to violate due process. The state law at issue, TENN.CODE ANN. § 53–11–451(d)(4) (1991), states:

(d) Property taken or detained under this section shall not be subject to replevin, but is deemed to be in the custody of the director or the director's authorized representative, agent or employee, the commissioner or the commissioner's authorized representative, agent or employee, or a sheriff, deputy sheriff, municipal law enforcement officer, or constable, subject only to the orders and decrees of the circuit or criminal court. When property is seized under parts 3 and 4 of this chapter or title 39, chapter 17, part 4, the seizing authority may:

· · · · ·

(4) Regardless of any other method of disposition of property contained in this chapter, use the property taken or detained, with permission of the court and under such terms and conditions as are

* The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

approved by the court, for use in the drug enforcement program of the county in which the goods are seized, and/or, with approval of the court having jurisdiction over the property, sell the property and utilize the proceeds for the drug enforcement program of the county in which the property was seized.

Defendant also cites Tennessee's Attorney General's interpretation of this provision:

Subsection (d)(4) provides a method whereby a seizing agency may use property taken or detained if the agency receives judicial authorization. The property can only be used by the seizing agency if the use has been authorized by the local circuit or criminal court and the property is to be used in the drug enforcement program of the county in which the goods are seized.

Tenn. Op. Atty. Gen. No. 90–19 (Feb. 22, 1990). Here, the Tennessee officers admit that they did not receive judicial approval before using confiscated marijuana to engineer the reverse sting operation that ensnared defendant. Defendant claims that the officers also violated the statute because the marijuana used in this case was not seized in Roane County and was not used by the agency that actually seized it.

Because defendant does not clearly articulate the theory behind his asserted violation of due process, it is necessary to consider the possible approaches by which such a claim could be made. Defendant does not argue that the officers' violation of TENN.CODE ANN. § 53–11–451(d)(4) (1991) amounted to entrapment. In any case, that approach has been rejected by the Supreme Court, which noted that an entrapment defense is based on a defendant's lack of predisposition, not on officer misconduct. *See, e.g., United States v. Russell,* 411 U.S. 423, 433, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973).

Nor does defendant present an entrapment defense based on due process notions, under which "the government's involvement in creating his crime, *i.e.,* the means and degree of inducement, was so great, 'that a criminal prosecution for the [crime] violates the fundamental principles of due process,' his predisposition to commit the crime notwithstanding." *United States v. Tucker,* 28 F.3d

1420, 1422 (6th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1426, 131 L.Ed.2d 308 (1995), quoting *Russell,* 411 U.S. at 430, 93 S.Ct. at 1642. Indeed, such an argument is also unavailable to this defendant, for the officers' failure to comply with TENN.CODE ANN. § 53–11–451(d)(4)(1991) did not cause defendant to conspire to possess with intent to distribute marijuana. The defendant obviously did not know that the officers were violating TENN.CODE ANN. § 53–11–451(d)(4)(1991). Thus, the officers' failure to comply with the state regulation had no impact on defendant's decision to commit the offense to which he has pled guilty. *See United States v. Caceres,* 440 U.S. 741, 752–53, 99 S.Ct. 1465, 1472, 59 L.Ed.2d 733 (1979) (rejecting defendant's claim that evidence should be suppressed because government's failure to comply with regulations requiring IRS authorization for eavesdropping violated due process, for "[r]espondent cannot reasonably contend that he relied on the regulation, or that its breach had any effect on his conduct."). Indeed, the Tennessee Court of Appeals recently rejected an argument that officers' noncompliance with TENN.CODE ANN. § 53–11–451(d)(4) (1991) required suppression of the evidence. *State v. Patton,* 898 S.W.2d 732 (Tenn.Crim.App.1994), *appeal denied,* (Mar. 6, 1995). In *Patton,* the Court found no nexus between the noncompliance and defendant's due process rights to life, liberty, or property:

Thus, because we can find no significant connection between the failure on the part of the police to comply with the statute and the alleged criminal acts on the part of the defendant, a suppression of the evidence would contribute nothing toward the protection of individual rights.

898 S.W.2d at 735.

Defendant cites cases in which courts consider whether police officers' outrageous conduct might prevent a conviction notwithstanding defendant's predisposition to commit the crime. *See, e.g., United States v. Barger,* 931 F.2d 359 (6th Cir.1991). But defendant does not claim that the government's allegedly outrageous conduct caused him to be entrapped despite his predisposition. Thus, cases like *Barger* are inapposite.

Defendant appears to be arguing then for a broader due process right: a right to be free from outrageous governmental conduct even when such conduct does not deprive individuals of a specific liberty interest. Thus defendant argues that "some police misconduct might be so egregious as to violate the accused's due process rights" without acknowledging that this proposition was announced in a case considering whether a defendant was entrapped by alleged police misconduct, not whether police misconduct per se violates due process. In support of his implicit argument, defendant encourages this Court to adopt Judge Arnold's dissent in an Eighth Circuit case rejecting a defendant's claim that noncompliance with a statute requiring judicial approval for use of marijuana in a reverse sting operation was so outrageous as to constitute a violation of his due process rights. *United States v. Kummer*, 15 F.3d 1455 (8th Cir.1994). In dissent, Judge Arnold wrote:

> The Court today evidently holds that it is not outrageous for sworn officers of the state to break the law. For me, official illegality must almost always be outrageous, for if the government will not obey the law, how can it rightfully expect its citizens to feel an obligation to do so?

*Kummer*, 15 F.3d at 1462–63 (Arnold, J., dissenting).

There is some potential case support for defendant's implicit theory. In *United States v. Russell*, the Supreme Court noted:

> While we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, cf. *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), the instant case is not of that breed.... The law enforcement conduct here stops far short of violating that "fundamental fairness, shocking to the universal sense of justice," mandated by the Due Process Clause of the Fifth Amendment.

*Russell*, 411 U.S. at 431–32, 93 S.Ct. at 1643. This passage does not appear to limit its scope to entrapment cases or violations of specific liberty interests. Moreover, *Russell* cites *Rochin*, in which the Supreme Court struck down a conviction based on evidence obtained when police officers had a doctor administer an emetic solution through a tube into defendant's stomach so that defendant would vomit the evidence he had swallowed during a police raid, for "the conviction of the petitioner has been obtained by methods that offend the Due Process Clause." *Rochin v. California*, 342 U.S. 165, 174, 72 S.Ct. 205, 210–11, 96 L.Ed. 183 (1952):

> [T]he proceedings by which this conviction was obtained do more than offend some fastidious squeamishness or private sentimentalism about combatting crime too energetically. This is conduct that shocks the conscience. Illegally breaking into the privacy of the petitioner, the struggle to open his mouth and remove what was there, the forcible extraction of his stomach's contents—this course of proceeding by agents of government to obtain evidence is bound to offend even hardened sensibilities. They are methods too close to the rack and the screw to permit of constitutional differentiation.

*Rochin*, 342 U.S. at 172, 72 S.Ct. at 209–10. Because *Russell* and *Rochin* are written in such broad terms, they could be read to support a theory of due process that protects individuals from outrageous police conduct that shocks the conscience even if that conduct does not deprive individuals of a life, liberty, or property interest protected under the due process clause.

Before sanctioning such a novel and wide-ranging theory of due process, however, it suffices to note that defendant has not come close to alleging outrageous police conduct that shocks the conscience. The statute the Tennessee officers violated is concerned primarily with accounting for items that are subject to forfeiture. By requiring law enforcement officers to receive judicial approval before using forfeited items in a drug enforcement action, the statute seeks to ensure that such items are used only on official police business rather than for officers' personal use. As such, Tenn.Code Ann. § 53–11–451(d)(4) (1991) has no relationship to this particular defendant's individual rights; it is

designed to further the interests of all citizens in a lawful police force. In sum, because the noncompliance at issue in this case implicates no due process interests of the defendant, and does not shock the conscience, it cannot bar his conviction.

## B

■ Citing *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), defendant also argues that the United States is bound, under the Tenth Amendment to the United States Constitution, to respect Tennessee's law requiring law enforcement officials to receive judicial approval before using forfeited marijuana in reverse sting operations. This argument also fails.

■ First, *Usery* was explicitly overruled by *Garcia v. San Antonio Metro. Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). Second, defendant has no individual right in requiring law enforcement officers to comply with TENN. CODE ANN. § 53–11–451(d)(4)(1991). Third, even if the State of Tennessee believed that its policy regarding use of seized contraband was so important as to merit suppression of evidence gained by means that violate that policy, *contra State v. Patton,* 898 S.W.2d 732 (Tenn.Crim.App.1994), *appeal denied,* (Mar. 6, 1995) (rejecting defendant's motion to suppress evidence when officers did not comply with TENN.CODE ANN. § 53–11–451(d)(4)), defendant lacks standing to raise the state's interests. *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) (noting that a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties").

## III

For the reasons stated above, we **AFFIRM** defendant's conviction and sentence.