**File Name: 08a0080n.06**
**Filed: January 25, 2008**

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

**No. 06-6075**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF KENTUCKY |
| | ) | |
| YOU DON BUSSELL, | ) | **O P I N I O N** |
| | ) | |
| Defendant-Appellant. | ) | |

**BEFORE:** **GUY, GILMAN, and McKEAGUE, Circuit Judges.**

**McKEAGUE, Circuit Judge.** You Don Bussell appeals his conviction and sentence on drug charges. The parties have waived oral argument. Based on our review of the briefs, record, and applicable case law, we affirm.

**I**

On March 24, 2004, Kenneth Catlett agreed to cooperate with investigators after they discovered that he was selling crack cocaine out of his Hopkinsville, Kentucky, motel room. Catlett told authorities that he obtained his cocaine from Bussell at the latter's home or from the store Bussell owned. According to Catlett, he would typically obtain a "50 pack," or fifty $10 rocks, sell them for a total of $500, and return anywhere from $350 to $400 to Bussell.

Officers asked Catlett to set up a buy from Bussell. They searched Catlett and his vehicle, fitted him with a recording device, and gave him pre-copied money to buy the drugs. Catlett testified that he immediately went to Bussell's home, was let inside, gave Bussell the money, and received crack cocaine in return. Catlett then gave the drugs to the officers. The officers were unable to see the actual transaction.

On March 25, 2004, officers monitored Catlett's telephone conversation with Bussell at the store that Bussell owned. By this time, officers had also obtained a search warrant for Bussell's house. After the phone call, officers observed Bussell pull up to his house and enter through the front door. Approximately ten minutes later, they saw Bussell exit the house. As one of the officers got out of the squad car to execute the search warrant, he saw Bussell toss something behind him. During the ensuing search, officers found a baggie of crack cocaine near where the defendant had been seen tossing something. Inside the house, they found razor blades and several more baggies of crack cocaine inside a boot in the master-bedroom closet. Bussell had $480 in cash on his person, and $300 in cash was found between his mattress and box springs. None of the cash matched the money provided to Catlett for the drug purchase the day before. Nor did the razor blades appear to have any cocaine residue on them.

A federal grand jury indicted Bussell. Count 1 charged him with knowingly and intentionally distributing crack cocaine. Count 2 charged him with knowingly and intentionally possessing with intent to distribute five grams or more of crack cocaine. Both charges were for violations of 21 U.S.C. § 841(a), (b)(1)(C).

At trial, Bussell's defense theory was that Catlett planted the drugs in his house. Catlett testified that the Government promised him that it would not prosecute him for his own drug-related activities if he gave truthful information at trial. Bussell's son Marcus testified that, while he was working at Bussell's store on March 25, 2004, he saw Catlett come into the store, speak with Bussell for a few minutes, and leave the store after Bussell gave him a key from his key ring. Brenda Dean Thompson, Bussell's sister, testified that she resided three doors down from Bussell. On the day of the search, while she was going to her mailbox, she observed Catlett pull into Bussell's driveway, emerge from his vehicle with a "brown paper sack," and go around the back of the house. A few minutes later, she saw Catlett return to his vehicle without the sack. On rebuttal, one of the officers testified that he had not informed Catlett about the plan to search Bussell's premises.

Prior to trial, Bussell filed a pre-trial motion to suppress all evidence seized, arguing, inter alia, that Catlett was a parolee and as such was ineligible under Kentucky correctional policy to serve as an informant without a pre-approved agreement between investigators and the Kentucky Department of Corrections ("KDOC"). The policy reads in relevant part: "An offender on supervision shall generally be discouraged from acting as an informant for law enforcement agencies. An offender may be used as an informant if it has been approved by the appropriate authority." Ky. Corr. Policy No. 27-07-01(II)(B)(1). There was no dispute that investigators did not seek approval from the corrections department prior to using Catlett as an informant. The district court rejected Bussell's argument, however, and denied the motion.

At the close of the evidence, Bussell moved for a judgment of acquittal pursuant to Fed. R. Crim. P. 29, which the court denied. The jury convicted him on both counts.

The probation office prepared a Presentence Report (the "PSR"). Based on a recommendation that there was 25.6 grams of crack cocaine involved, the office calculated a total offense level of twenty eight under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines").[1] With a criminal history of VI, the resulting imprisonment range equaled 140 to 175 months.

Bussell filed written objections to the PSR. He argued that the evidence did not establish a quantity of crack cocaine of five grams or more. He urged that the district court sentence him to the statutory mandatory minimum sentence of 120 months because the Government's star witness was a confidential informant ("CI") on parole who was to receive leniency in exchange for his testimony. Finally, if the district court were to reject his two prior arguments, Bussell asked to be sentenced at the bottom of the Guidelines range because 140-144 months would be appropriate punishment for the crimes of which he was convicted.

The district court held a sentencing hearing. On the question of quantity of the crack cocaine at issue, the district court concluded that there was sufficient evidence in the record to justify the quantity and overruled the defendant's objection. Having reviewed the PSR, the district court agreed with its Guidelines calculations. The district court denied the Government's motion for an upward departure. On the defendant's remaining objections, the district court concluded that a sentence at the low end of the Guidelines range would be sufficient. Specifically, the district court explained:

> And, therefore, the Court finds that defendant is subject to the enhanced penalties under 21, United States Code, 851. Court having considered the guidelines,

---

[1]The office used the 2005 version of the Guidelines manual.

sentencing guidelines in 18, United States Code, 3553(a), imposes the following sentence: It's the judgment of the Court that defendant is committed to the custody of Bureau of Prisons for a term of 140 months as to each of counts 1 and 2 in the indictment, which shall be served concurrently for a total term of 140 months imprisonment.

* * *

Restitution is not an issue in this case. A fine and costs of investigation, prosecution and incarceration and supervision are waived due to other sanctions imposed. And I will state here, I know that he owned some property that has some value, but he has children and he's going to be incarcerated for some time, and I think in order to have some income and some -- some -- some means of supporting his -- his children, that -- that I'm not going to levy a fine in this case because of the length of incarceration. I believe all that money will be eaten up maintaining them.

Having determined that the statutory penalties are enhanced and having considered 18, United States Code, 3553(a), and the advisory guidelines, which produce a total offense level of 28, a criminal history category of VI, the guideline ranges are 140 to 175 months custody, a fine of $12,500 to $6 million, and eight years of supervised release, the Court believes a reasonable sentence to be 140 months custody followed by eight years of supervised release, which falls within the advisory guidelines range and is sufficient to meet the sentencing objectives of punishment and general deterrence and satisfies the statutory provisions.

JA 85-87. The district court asked if there were any additional objections, to which both parties responded in the negative.

Bussell timely appealed.

# II

On appeal, Bussell asserts that the district court committed three reversible errors: (a) it erred in denying his motion to suppress; (b) it erred in denying his Rule 29 motion; and (c) it failed to

consider all of the sentencing factors in 18 U.S.C. § 3553(a), as required by *United States v. Booker*,

543 U.S. 220 (2005).

### A.      Motion to Suppress

Bussell contends that the district court erred in denying his motion to suppress.  It is

undisputed that Kentucky officials violated a KDOC policy that required prior approval before using

a Kentucky parolee like Catlett as an informant.  The officials' violation of KDOC policy amounted

to "outrageous governmental misconduct," according to Bussell.

In addressing a challenge to the denial of a motion to suppress, we review the district court's

factual findings for clear error and its legal conclusions de novo. *United States v. Meyer*, 359 F.3d

820, 824 (6th Cir. 2004).  The ultimate legal question is whether the purported governmental

misconduct "survives constitutional scrutiny." *United States v. Loney*, 331 F.3d 516, 520 (6th Cir.

2003) (citation omitted).

In arguing that the district court erred in denying his suppression motion, Bussell does not

suggest that the search violated his Fourth Amendment or other constitutional right independently

of the alleged misconduct.  His claim is essentially that the governmental misconduct was so extreme

as to violate due process.  Normally, outrageous governmental conduct is framed as a defense to

criminal charges by which a "defendant argues that the government's involvement in creating his

crime (i.e., the means and degrees of inducement) was so great 'that a criminal prosecution for the

[crime] violates the fundamental principles of due process.'" *United States v. Warwick*, 167 F.3d

965, 974 (6th Cir. 1999) (quoting *United States v. Russell*, 411 U.S. 423, 430 (1973)).

Bussell relies on *United States v. Pipes*, 87 F.3d 840 (6th Cir. 1996), for the proposition that the "outrageous conduct" concept may be applied to matters independent of the conduct of the defendant himself. In *Pipes*, the defendant argued that Tennessee officers engaged in outrageous conduct by violating a Tennessee statute "requir[ing] prior judicial approval before seized contraband may be used in a reverse sting operation." *Id.* at 841. This court observed that *Russell* and another Supreme Court decision, *Rochin v. California*, 342 U.S. 165 (1952), were "written in such broad terms[] [that] they could be read to support a theory of due process that protects individuals from outrageous police conduct that shocks the conscience even if that conduct does not deprive individuals of a life, liberty, or property interest protected under the due process clause." *Pipes*, 87 F.3d at 843. The court concluded, however, that even if it were to assume arguendo that the outrageous-conduct concept extended to a claim like Pipes's, he "ha[d] not come close to alleging outrageous police conduct that shocks the conscience," because the Tennessee statute had "no relationship to this particular defendant's individual rights" insofar as it was "designed to further the interests of all citizens in a lawful police force." *Id.* at 843-44.

Bussell's argument fails for similar reasons. The policy on its face does not confer any individual rights on third parties. The policy appears to be in place (a) so that corrections officials can better monitor parolees and (b) to dissuade parolees from being involved in criminal activity. In any event, defense counsel was able to use the policy during trial to impeach Catlett. Because the violation of the KDOC policy does not "shock[] the conscience" in this instance, *id.* at 843, we reject Bussell's first claim of error.

**B.      Sufficiency of the Evidence**

Next, Bussell maintains that the Government offered insufficient evidence at trial to establish that he knowingly possessed crack cocaine.  He asserts that Catlett's purchase of crack cocaine was not controlled because surveillance officers did not see Catlett enter Bussell's home or meet with Bussell.  Bussell also contends that Catlett had access to his house on the same day the search warrant was executed.

To support Bussell's convictions, the Government was required to prove that Bussell knowingly possessed crack cocaine with the intent to distribute it and that he knowingly distributed the drug. 21 U.S.C. § 841(a)(1); *United States v. Coffee*, 434 F.3d 887, 897 (6th Cir.), *cert. denied*, 126 S. Ct. 2313 (2006).  In evaluating the sufficiency of the evidence, we do not weigh the evidence presented, consider the credibility of the witnesses, or substitute our judgment for that of the jury. *United States v. Davis*, 177 F.3d 552, 558 (6th Cir. 1999).  The judgment will be upheld as long as the evidence, viewed in the light most favorable to the prosecution, and after giving the Government the benefit of all inferences that could reasonably be drawn from the testimony, could justify a rational trier of fact in finding the elements of the charged crime proven beyond a reasonable doubt. *Id.*  Circumstantial evidence alone may be sufficient to sustain a conviction and such evidence need not exclude every reasonable explanation except that of guilt. *United States v. Charles*, 138 F.3d 257, 265 (6th Cir. 1998); *United States v. Peters*, 15 F.3d 540, 544 (6th Cir. 1994).

Bussell offers little more than attacks on the jury's credibility determinations.  In essence, he asserts that the jury should have disbelieved Catlett and the investigating officers and, instead, should have credited the testimony of Bussell's son and sister.  Whether the Government witnesses

were "credible is for the jury to determine, not this court." *United States v. Armstead*, 467 F.3d 943, 946 (6th Cir. 2006) (citation omitted); *see also United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006) (noting that a conviction may rest "exclusively" on testimony of "cooperating codefendants who testified in hopes of receiving a reduced sentence"). As for his assertion that there was no evidence that he knowingly possessed crack cocaine, a review of the record contradicts it. Accordingly, we reject his second basis for relief.

**C.     Bussell's Sentence**

Finally, Bussell argues that the district court failed to consider all of the relevant sentencing factors under 18 U.S.C. § 3553(a). We review a defendant's sentence for reasonableness under an abuse-of-discretion standard. *Gall v. United States*, 128 S. Ct. 586, 596-97 (2007).

Under the parsimony provision of 18 U.S.C. § 3553(a), a district court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of § 3553(a)(2). Section 3553(a)(2) provides that the district court must consider "the need for the sentence imposed":

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

While the district court need not explicitly reference each of the sentencing factors of § 3553(a), "there must be sufficient evidence in the record to affirmatively demonstrate the court's consideration of [these factors]." *United States v. Jones*, 445 F.3d 865, 869 (6th Cir.) (internal quotation marks omitted), *cert. denied*, 127 S. Ct. 251 (2006). "The appropriateness of brevity or length [of the court's explanation], conciseness or detail, when to write, what to say, depends upon circumstances." *Rita v. United States*, 127 S. Ct. 2456, 2468 (2007).

One of the sentencing factors that the district court must consider is the applicable Guidelines range. 18 U.S.C. § 3553(a)(4); *United States v. Gale*, 468 F.3d 929, 934 (6th Cir. 2006), *cert. denied*, 127 S. Ct. 3065 (2007). The Supreme Court explained in *Gall* that the Guidelines are the "starting point and the initial benchmark" for federal sentencing. 128 S. Ct. at 596. In this circuit, "a sentence falling within the properly calculated Guidelines range is credited with a rebuttable presumption of reasonableness." *Gale*, 468 F.3d at 937 (internal quotation marks omitted); *see also Rita*, 127 S. Ct. at 2462-63 (approving of circuit courts' adoption of a presumption of reasonableness).

Bussell does not argue that the district court erred in calculating the Guidelines range. A review of the record, including the PSR, confirms that the district court treated the Guidelines as advisory and correctly calculated the range applicable to Bussell. Accordingly, he "must show that the district court made sufficient errors in applying (or failing to apply) the remaining sentencing factors such that his sentence was unreasonable, even though his sentence fell within the correctly calculated Guidelines range." *Id.*

Bussell claims that the district court improperly used the Guidelines range as a controlling factor. He argues that there was no discussion of any other § 3553 factor. He fails, however, to point to any specific sentencing factor that the district court should have discussed but did not.

Bussell raised several objections to the PSR at sentencing. The district court rejected his first objection that there was insufficient evidence on the quantity of drugs; Bussell does not argue on appeal that the district court erred on that ruling. He also objected that he should receive the statutory minimum sentence because the officers should not have used the CI in their investigation and the CI had an incentive to help the Government. However, the district court had earlier rejected the argument that the Government should not have used the CI when it denied the motion to suppress. On his final objection, the district court implicitly agreed—he asked for, and received, a sentence at the bottom of the Guidelines range.

As noted above, the district court explained that the statutory penalties were enhanced because of Bussell's prior convictions and that it considered both § 3553(a) and the advisory guidelines. The court stated that a sentence at the bottom of the Guidelines range was "sufficient to meet the sentencing objectives of punishment and general deterrence and satisfies the statutory provisions." The court also discussed Bussell's need to support his children and decided against imposing a fine.[2]

---

[2]Additionally, the district court not only considered Bussell's criminal history in general, but also his violation of supervised release stemming from the instant drug convictions. Directly after the sentencing in the present case, the district court sentenced Bussell on the revocation of his supervised release. The district court sentenced Bussell to twenty-four months of imprisonment. The Guidelines generally call for consecutive sentences on supervised-release violations, U.S.S.G. § 7B1.3(f), and the district court noted that this was a factor when it sentenced the defendant to the

Of course, the district court could have said more. The court could have specifically

addressed Bussell's objection that the CI had an incentive to help the Government. Yet, while the

district court *could* have said more, it was not required to do so. The entire argument of the CI's

promise of leniency consisted of two sentences in his written objections.[3] Bussell's counsel did not

allude to it during the hearing, other than a reference to purported credibility questions with the CI.

More importantly, while the argument clearly goes to the credibility of the CI at trial, it appears to

have little to no bearing on how much imprisonment Bussell should get *given* his conviction. The

argument makes more sense as an attack on his conviction, not a valid reason for a lesser sentence.

"A sentencing judge has no more duty than we appellate judges do to discuss every argument made

by a litigant; arguments clearly without merit can, and for the sake of judicial economy should, be

passed over in silence." *Gale*, 468 F.3d at 940 (quoting *United States v. Cunningham*, 429 F.3d 673,

678 (7th Cir. 2005)).

The district court stated that it considered the § 3553(a) factors and treated the Guidelines

as advisory. By "correctly calculat[ing] and carefully review[ing] the Guidelines range, [the district

court] necessarily gave significant weight and consideration" to the other sentencing factors

"considered by the Sentencing Commission when setting the Guidelines range." *Gall*, 128 S. Ct. at

---

bottom of the Guidelines range in the instant case, *see* JA 85 ("And in light of the fact that we have the -- the supervised release issue revocation, which has an issue of whether it runs concurrently or consecutively, it's my determination that the low end of the guidelines would be appropriate on the charges of conviction in this case.").

[3]"Furthermore, the informant was going to receive a more lenient sentence for his pending charges and had already not been charged for several crimes in which he had committed. This provided a substantial motivation for the informant to 'help' the government." JA 71.

599. Bussell did not argue below or on appeal that his case was in some sense outside the "minerun" of federal drug cases. *Rita*, 127 S. Ct. at 2469. Nor has he suggested that there were any unique personal, family, or other circumstances not considered by the district court that would justify a lesser sentence. Had Bussell raised some unique circumstance of his case warranting a lower sentence, "specific discussion of the point might have been in order, but it was not incumbent on the [district court] to raise every conceivable relevant issue on [its] own initiative." *Gall*, 128 S. Ct. at 599. In the end, it is clear that the district court concluded that Bussell's case fit neatly within the Guidelines. "Where a matter is conceptually simple as in the case at hand and the record makes clear that the [district court] considered the evidence and arguments, we do not believe the law requires the judge to write more extensively." *Rita*, 127 S. Ct. at 2469; *see also id*. at 2468 ("Circumstances may well make clear that the judge rests his decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence (in terms of § 3353(a) and other congressional mandates) in the typical case, and that the judge has found that the case before him is typical. . . . [T]he judge normally need say no more.").

We find no procedural error by the district court. Bussell's within-Guidelines sentence is substantively reasonable. Accordingly, we reject his final claim of error.

## III

For the foregoing reasons, we AFFIRM Bussell's conviction and sentence.