*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 04a0408p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

FELIX ERNESTO SOSA,

     *Petitioner-Appellant,*

  *v.*

KURT JONES, Warden,

     *Respondent-Appellee.*

No. 03-1195

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 02-71797—Arthur J. Tarnow, District Judge.

Argued and Submitted: September 24, 2004

Decided and Filed: November 24, 2004

Before: SILER, BATCHELDER, and ROGERS, Circuit Judges.

---

## COUNSEL

**ARGUED:** J. Philip Calabrese, SQUIRE, SANDERS & DEMPSEY, Cleveland, Ohio, for Appellant. **ON BRIEF:** J. Philip Calabrese, Howard J.C. Nicols, SQUIRE, SANDERS & DEMPSEY, Cleveland, Ohio, for Appellant. Debra M. Gagliardi, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellee. Felix Ernesto Sosa, Carson City, Michigan, pro se.

---

## OPINION

---

  ROGERS, Circuit Judge. Felix Ernesto Sosa appeals the denial of his petition for a writ of habeas corpus, seeking relief from his 1990 conviction for conspiracy to deliver over 650 grams of cocaine. Mr. Sosa argues that he was denied due process because the police entrapped him by pressuring his co-conspirator and prolonging the drug sting in order to bring the amount of cocaine sold to more than 650 grams, so that the offense would carry a mandatory sentence of life without the possibility of parole under Michigan law. The Michigan courts rejected Mr. Sosa's entrapment claims. Because the Supreme Court has not yet recognized a constitutionally required entrapment defense, the Michigan Court of Appeals reached a conclusion that was not contrary to, nor an unreasonable application of, clearly established federal law. We therefore affirm the district court's denial of the habeas corpus petition.

  Between March 19 and April 4, 1990, Felix Sosa made five controlled sales of cocaine to Officer Daniel Hiltz through Antonio Velez. The first four sales were for relatively small amounts of cocaine, ranging from ½ ounce to 2 ounces (14 to 57 grams). Officer Hiltz began requesting larger quantities of cocaine from Mr. Velez and, after several requests and some pressure from Mr. Velez, Mr. Sosa agreed to

1

arrange a fifth sale of 20 ounces (577 grams). Officer Hiltz requested an additional five ounces (140 grams) just prior to the sale, which Mr. Sosa agreed to procure for Mr. Velez. Mr. Sosa acquired approximately 26 ounces (711 grams) of cocaine from various sources in and around Detroit and completed the controlled sale at Mr. Velez's home. Both were arrested shortly thereafter.

On advice of counsel, Mr. Sosa pleaded guilty to conspiracy to deliver more than 650 grams of cocaine, a crime that carried a mandatory life sentence without the possibility of parole. Mr. Sosa attempted to withdraw his guilty plea, claiming entrapment, but the trial court found no basis for withdrawal of his plea and sentenced him to the mandatory penalty. On appeal, Mr. Sosa sought an entrapment hearing, which was eventually ordered by the Michigan Court of Appeals. At the four-day entrapment hearing, Mr. Sosa presented two different entrapment theories. First, Mr. Sosa raised a traditional entrapment defense under Michigan law. Second, he presented a variation of the defense known as "sentencing entrapment," which is based on an allegation that the police sought to increase the order of magnitude of the crime that the defendant was predisposed to commit. Mr. Sosa attempted to present an ineffective assistance of counsel argument at the hearing, but he had already waived the issue because he did not raise ineffective assistance of counsel in his first direct appeal to the Michigan Court of Appeals, the appeal that subsequently resulted in the entrapment hearing.[1]

Based on the testimony received at the entrapment hearing, the trial court found that Mr. Sosa had not been entrapped under Michigan law. The trial court did express dismay at the outcome, noting that Mr. Sosa probably would not have been dealing in the amounts at issue absent Mr. Velez's pressure and that Mr. Sosa was not the major drug trafficker the statute was aimed at punishing. However, the trial court was bound by Michigan's formulation of the entrapment defense, which focuses almost solely on the conduct of the police. *See People v. Juillet*, 475 N.W.2d 786, 792-93 (Mich. 1991). Mr. Sosa appealed, challenging the determination that he had not been entrapped as a matter of Michigan law and also raising a claim that he was denied due process based on the conduct of the police. The Michigan Court of Appeals affirmed Mr. Sosa's conviction. Mr. Sosa sought leave to appeal to the Michigan Supreme Court, which was denied.

Mr. Sosa then petitioned for a writ of habeas corpus in the U.S. District Court for the Eastern District of Michigan, claiming that he was denied due process based on the conduct of the police. The district court first found that entrapment was not a constitutional defense and thus the issue of entrapment could not form a basis for habeas relief. The district court then found that, assuming that a "due process" claim based on "outrageous" government conduct was cognizable, the police conduct at issue was not so outrageous as to warrant relief, and denied the writ. This appeal followed.

Appellate courts, in reviewing federal habeas corpus proceedings, examine the district court's legal conclusions under a de novo standard and its factual findings under a clearly erroneous standard. *Caver v. Straub*, 349 F.3d 340, 345 (6th Cir. 2003) (citing *Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir. 1999)). Mr. Sosa's petition is governed by 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pub. L. No. 104-132, 110 Stat. 1214 (1996) (relevant portions codified as amended at 28 U.S.C. § 2254 (2000)); *see Williams v. Taylor*, 529 U.S. 362, 402 (2000). Under AEDPA, a writ of habeas corpus "may issue only if ... the state-court adjudication resulted in a decision that either (1) 'was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States.'" 529 U.S. at 412 (quoting 28 U.S.C. § 2254(d)(1) (2000)).

Mr. Sosa first argues that the formulation of the entrapment defense set out in the seminal Supreme Court decision of *Sorrells v. United States* is grounded in due process and that the failure of the prosecution

---

[1] Mr. Sosa's trial attorney testified at the entrapment hearing that he advised Mr. Sosa to plead guilty to a mandatory non-parolable life sentence as part of a strategy to give Mr. Sosa an ineffective assistance of counsel claim on appeal.

to prove beyond a reasonable doubt that Mr. Sosa was predisposed to sell large amounts of cocaine amounted to a deprivation of due process. 287 U.S. 435 (1932). Because the Supreme Court precedent that formulated the defense of entrapment does not rely on due process, and the related concept of sentencing entrapment has never been accepted by the Supreme Court, Mr. Sosa's petition for a writ of habeas corpus must be denied.

There are two formulations of the defense of entrapment, both of which originate with the Supreme Court's decision in *Sorrells v. United States*, 287 U.S. 435 (1932). The "subjective" theory of entrapment focuses on the predisposition of the defendant and is the formulation of the defense adopted by the federal courts. *Id*. at 451; *see United States v. Tucker*, 28 F.3d 1420, 1422-23 (1994). A defendant may raise the defense of entrapment at trial, and the government must prove beyond a reasonable doubt that the defendant was predisposed to commit the crime. *See Jacobsen v. United States*, 503 U.S. 540, 548-49 (1992).

The "objective" theory of entrapment focuses on the conduct of the government, rather than individual predisposition, and has been consistently raised as an alternative formulation of the entrapment defense in concurring or dissenting opinions by Supreme Court justices. *See, e.g., United States v. Russell*, 411 U.S. 423, 439-50 (1973) (Stewart, J. dissenting). Under this theory, entrapment occurs when the government induces or instigates the commission of a crime by one not ready and willing to commit it, rather than merely providing the opportunity to commit a crime. *Id.* at 445. Michigan has adopted the objective theory of entrapment. *See People v. Juillet*, 475 N.W.2d 786, 792-93 (Mich. 1991).

Mr. Sosa cites several references in *Sorrells v. United States* to "public policy" and the "essential demands of justice" to support the proposition that the federal entrapment defense is rooted in due process. *See* 287 U.S. at 446, 448, 451. This interpretation of *Sorrells* is contradicted by the express reasoning of the Supreme Court in *Sorrells*, and by the subsequent decision of the Court in *United States v. Russell*, 411 U.S. 423 (1973).

A close reading of *Sorrells* reveals that statutory interpretation, not the Constitution of the United States, was the theoretical basis for the entrapment defense. The Court in *Sorrells* stated:

> We are unable to conclude that it was the intention of the Congress in enacting this statute that its processes of detection and enforcement should be abused by the instigation by government officials of an act on the part of persons otherwise innocent in order to lure them to its commission and to punish them. We are not forced by the letter to do violence to the spirit and purpose of the statute. This, we think, has been the underlying and controlling thought in the suggestions in judicial opinions that the government in such a case is estopped to prosecute or that the courts should bar the prosecution.

287 U.S. at 448. The Court further concluded:

> Fundamentally, the question is whether the defense, if the facts bear it out, takes the case out of the purview of the statute because it cannot be supposed that the Congress intended that the letter of its enactment should be used to support such a gross perversion of its purpose.

*Id.* at 452. The fundamental root of the defense of entrapment then, in the view of the Supreme Court in *Sorrells*, is that Congress could not have intended its statutes to encompass criminal acts instigated by overzealous law enforcement agents absent preexisting criminality. The formulation of the entrapment defense based on the predisposition of the defendant which originated in *Sorrells* is therefore not based on due process, but rather on statutory interpretation. Indeed, the Supreme Court appeared explicitly to eschew any power to acquit beyond its power to interpret the statute:

> Where courts of equity refuse equitable relief because complainants come with unclean hands, they are administering the principles of equitable jurisprudence governing equitable

rights. But in a criminal prosecution, the statute defining the offense is necessarily the law of the case.

> To construe statutes so as to avoid absurd or glaringly unjust results, foreign to the legislative purpose, is, as we have seen, a traditional and appropriate function of the courts. Judicial nullification of statutes, admittedly valid and applicable, has, happily, no place in our system. The Congress by legislation can always, if it desires, alter the effect of judicial construction of statutes. We conceive it to be our duty to construe the statute here in question reasonably, and we hold that it is beyond our prerogative to give the statute an unreasonable construction, confessedly contrary to public policy, and then to decline to enforce it.

287 U.S. at 450.

Mr. Sosa's argument that *Sorrells* grounded the subjective theory of entrapment in due process is further undermined by the Supreme Court's decision in *United States v. Russell*, 411 U.S. 423, 428-39 (1973). In *Russell*, the petitioner argued that the defense of entrapment should rest on constitutional grounds. The Court was urged to adopt a constitutional rule based on due process that would preclude prosecution if the government agents became too involved in the commission of the crime. *Id.* at 430. The Court declined the opportunity, but left open the possibility that government conduct could be so outrageous that due process would bar prosecution, giving rise to Mr. Sosa's second argument, discussed in detail below. *Id.* at 431-32. Alternatively, the Court declined to extend the "non-constitutional" defense of entrapment to include factors beyond the predisposition of the defendant as set out in *Sorrells* and *Sherman v. United States*, 356 U.S. 369 (1958). *Russell*, 411 U.S. at 433-35. In doing so, the Court stated that the defense of entrapment is not of a "constitutional dimension" and that Congress could address itself to a substantive definition of the defense of entrapment if it so chose. *Id.* at 433. The discussion of entrapment by the majority in *Russell* clearly demonstrates that the defense of entrapment is not based on due process.

Mr. Sosa responds to *Russell* by arguing the statements regarding the non-constitutional nature of the subjective theory of entrapment are dicta. The distinction between a constitutional theory of entrapment based on due process and a subjective entrapment defense based on implied congressional intent appears, however, to have been pivotal to the decision in *Russell*. Even if it can be characterized as dictum, however, the considered dictum of five Supreme Court justices thoroughly undermines the possibility that state application of the entrapment defense is required by "clearly established" Supreme Court law.

Moreover, a finding that the subjective theory of entrapment is in fact based on due process would, standing alone, still not be sufficient to grant Mr. Sosa's petition. In addition, the theory of "sentencing entrapment" would have to be recognized and applied in this case. The concept of sentencing entrapment is an offshoot of the subjective theory of entrapment, mainly applied in narcotics cases under the federal sentencing guidelines. Under this theory, "[s]entencing entrapment occurs where outrageous government conduct overcomes the will of a defendant predisposed to deal only in small quantities of drugs, for the purpose of increasing the amount of drugs and the resulting sentence imposed against that defendant." *United States v. Williams*, 109 F.3d 502, 512 (8th Cir. 1997) (citations and internal quotation marks omitted). Mr. Sosa has pointed to no Supreme Court precedent that "clearly establishes" a federal prohibition of sentencing entrapment.

Mr. Sosa argues, in the alternative, that the outrageous conduct of the state police deprived him of due process. While the majority in *Russell* reiterated the subjective theory of entrapment, the opinion also introduced the possibility of a certain class of cases where government conduct during an investigation could be so egregious as to violate due process. *Russell*, 411 U.S. at 431-32 ("While we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction ... the instant case is distinctly not of that breed."); *see also Hampton v. United States*, 425 U.S. 484, 491-95

(1976) (Powell, J. concurring).[2] Even assuming the "due process" defense is clearly established by Supreme Court precedent, which does not appear to be the case, the Michigan Court of Appeals reasonably concluded the behavior of the police did not fall within the narrow class of cases contemplated by *Russell*. 411 U.S. at 431-32; *see United States v. Tucker*, 28 F.3d 1420 (6th Cir. 1994).

Mr. Sosa's case appears unfortunate. Michigan has since amended the statute that Mr. Sosa was convicted under such that he would not face a mandatory life sentence if arrested today. His co-conspirator won a new trial, was re-sentenced, and was recently released on parole. However, Mr. Sosa has not presented a legal argument that satisfies the standard of AEDPA.

AFFIRMED.

---

[2]A plurality of the Supreme Court sought to distance itself from this statement shortly thereafter. *See Hampton*, 425 U.S. at 488-91(plurality opinion).