**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0560n.06

**No. 07-2432**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | **ON APPEAL FROM THE** |
| | ) | **UNITED STATES DISTRICT COURT** |
| | ) | **FOR THE EASTERN DISTRICT** |
| **v.** | ) | **OF MICHIGAN** |
| | ) | |
| | ) | |
| **MARCO STRICKLAND,** | ) | |
| | ) | **O P I N I O N** |
| **Defendant-Appellant.** | ) | |

**BEFORE: GILMAN and McKEAGUE, Circuit Judges; SARGUS, District Judge[*]**

**Sargus, District Judge**. Following trial to a jury, Defendant-Appellant Marco Strickland appeals his conviction of attempted possession with intent to distribute a controlled substance and the imposition of a life sentence. As grounds for his appeal, Strickland asserts that (1) the Government engaged in sentencing entrapment, (2) the district court erroneously granted a continuance in violation of his right to a Speedy Trial, and (3) the Government failed to prove that he took a substantial step toward the commission of the offense of attempted possession. Because we find Strickland's assertions to be without merit, we affirm.

---

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

**I.**

In the summer of 2004, Timothy Jones, a confidential informant, was cooperating with a drug task force in Atlanta, Georgia to earn a sentencing reduction for a prior drug conviction. Strickland's cousin, Dexter, introduced Strickland to Jones. At the time, Strickland lived in Michigan and was visiting his family in Atlanta.

On July 22, 2004, Jones called Task Force Agent Rios who was posing as Jones's drug supplier, "Carlos." Jones informed Rios that he had met Strickland, and that Strickland had informed him that he was in search of a cocaine supplier. Jones facilitated a telephone introduction between "Carlos" and Strickland. The following day, Strickland, Jones and "Carlos" met at a restaurant. Another task force agent, Jason Summers, posed as a bodyguard and sat adjacent to the table, which enabled him to overhear the conversation between Agent Rios and Strickland.

Strickland advised that he was selling kilogram quantities of cocaine in the Detroit area for $24,000 per kilogram, and was interested in purchasing five kilograms of cocaine. Strickland informed Agent Rios that he had enough money for one kilogram, but that he "wanted to buy one and get four more fronted to him." (Summers, Trial Tr. at 42.) When Agent Rios equivocated about advancing four kilograms to Strickland for later sale and re-payment, Strickland provided the address to his mother's home in an attempt to assure "Carlos" that he would be repaid in full.

Agent Rios recorded several telephone conversations with Strickland between July 23 and July 28, 2004. On one of the calls, Strickland bragged that he could "mess up 20 girls in a week," meaning that he could "distribute 20 kilos of cocaine in a week's time." (*Id*. at 74-75).

Agent Rios told Strickland that he could arrange a meeting with someone in the Detroit area who could sell Strickland several kilograms of cocaine. Agent Rios then contacted the Detroit DEA

and a confidential informant named "Antonio," whose real name is Walter Ramirez, about assisting Strickland. Ultimately, Agent Patrick Caldwell was assigned to the investigation in Detroit. On July 30, 2004, "Antonio" telephoned Strickland claiming that he had just returned from Colombia with a supply.

Later that day, Ramirez/"Antonio" met Strickland and negotiated the transaction. Under its terms, Strickland would provide $40,000 as an initial payment for five kilograms of cocaine at $18,000 per kilogram and would repay the remaining $50,000 from the proceeds of the sale of the drugs. Ramirez claimed he was going to Atlanta to pick up the cocaine and would call Strickland when he returned to Detroit.

On August 4, 2004, Agent Caldwell taped fabric softener sheets around five books to simulate the appearance of block-kilograms of cocaine, placed them in a large black suitcase and put the suitcase in the trunk of an undercover vehicle. Ramirez then called Strickland and said he had returned from Atlanta with the cocaine.

When they met, Strickland had only $20,000 with him and claimed that he intended to collect another $20,000 from a friend who was still at work. Ramirez called a Spanish-speaking agent, purportedly his supplier, and, speaking in Spanish, asked whether the agents wanted him to proceed with the deal under the circumstances. The agent told Ramirez to proceed. Strickland then passed $20,000 to Ramirez. Ramirez directed Strickland to the trunk of his car in the parking lot and gave Strickland the key to the trunk. Strickland was arrested after opening the trunk and lifting out the suitcase as he was returning to his own vehicle.

On August 17, 2005, the grand jury returned an indictment charging Strickland with a violation of 21 U.S.C. §§ 846 and 841(a)(1). Strickland filed a motion to dismiss the indictment

on December 23, 2005. He asserted that the offense charged in the indictment was not supported by sufficient evidence. The district court denied the motion, concluding that Strickland's challenge to the competency of the evidence did not provide a basis for the dismissal of the indictment, which was valid on its face. Noting that, even if inadequacy of the evidence could provide a basis for dismissal, the district court found no merit to Strickland's claim that the Government lacked evidence of a consummated deal or any physical or measurable narcotics.

Strickland entered a plea of not guilty to the offense in the indictment. On June 1, 2006, the Government filed a notice of a sentencing enhancement pursuant to 21 U.S.C. § 851(a), setting forth two prior felony drug convictions on which it would rely to increase Strickland's sentence to a mandatory life term.

The parties stipulated to several extensions of the pretrial motion cut-off date. Further excludable delays occurred when Strickland's appointed counsel withdrew, and he retained new counsel. The district court conducted a pretrial hearing on September 14, 2006 and set the trial date for October 3, 2006. The following day, the Government moved for a continuance because the case agent was unavailable due to his scheduled appearance in another four-week trial. Over Strickland's objection, the district court determined that the ends of justice required the continuance, and adjourned the trial until November 28, 2006.

The trial began on November 28, 2006.[1] The jury returned a verdict of guilty and found that the amount of cocaine involved in the offense was five kilograms or more.

_____

[1]Prior to trial, the Government provided defense counsel with a plea offer of a ten-year term of imprisonment. The district judge engaged in a colloquy with Strickland to ascertain whether he was fully aware of the plea offer and its terms, and was voluntarily rejecting it. Strickland affirmed that he was aware of the offer, but that he rejected it, despite the court's admonition that "[i]f you're convicted, I will have no alternative, no discretion but to sentence you to life." (11/28/06 Tr. at 5.)

The United States Probation Office prepared a presentence report ("PSR") for Strickland and found a base offense level of 32 under U.S.S.G. § 2D1.1(c)(4) and a criminal history category of VI.[2] The Probation Office attributed between 5 and 15 kilograms of cocaine to Strickland for purposes of sentencing. These calculations resulted in a Guideline range of 210 to 262 months of imprisonment.

Strickland filed a motion for a downward departure and objected to the application of the mandatory life sentence enhancement. On October 24, 2007, the district court sentenced Strickland to the statutory life term of imprisonment. Strickland timely appealed.

The Court appointed counsel for Strickland's direct appeal. After his counsel filed his opening appellant's brief, Strickland moved for permission to file a supplemental *pro se* brief. His counsel later filed a reply brief. After briefing was complete, Strickland's counsel moved to withdraw. The Court granted that motion in April, 2009.

Strickland then filed another motion, seeking "an attorney only for my assistance in filing these issues pro-se" and sought a continuance in which to prepare additional briefing. The clerk's office entered an order denying Strickland's motion to file a supplemental brief, and presumably denied his motion for assistance and additional time. Thus, the matter is submitted on the briefs filed by Strickland's then-counsel and the Government.[3]

---

[2]Strickland did not receive an enhancement under U.S.S.G. § 4B1.1. The district court did not consider him a career offender at sentencing.

[3]The briefs filed by Strickland's former counsel address the issues that Strickland sought to raise *pro se*, with the exception of a matter related to his arraignment hearing. During the hearing, the Magistrate Judge and the Assistant United States Attorney apparently believed that the indictment charging Strickland with attempt to possess with intent to distribute a controlled substance did not raise a cognizable offense. The Magistrate Judge indicated on the record that she believed the matter would have to go back to the grand jury. (Record on Appeal ("ROA") at 47-48.) Strickland argues that this issue was never addressed.

## II.

### A.     Sentencing Enhancement

Strickland asserts that the Government violated his due process rights because law enforcement agents engaged in outrageous conduct when they controlled and structured a fictitious drug deal so that the offense would involve more than five kilograms of cocaine, thereby triggering the mandatory sentence of life imprisonment.  Strickland maintains that the district court erred in applying the mandatory life sentence under 21 U.S.C. § 841(b)(1)(A) and that he should have been sentenced under the statutory range of ten years to life under § 841(b)(1)(B) for one kilogram.[4] Strickland complains that the agents manipulated him and enabled him to attempt to possess a larger quantity of the drug than he actually had the means to possess.  He asserts that the Government engaged in sentencing entrapment to increase his penalty and that the most cocaine he could be assessed was one kilogram.

---

It is not clear why the Magistrate Judge thought the indictment did not state a cognizable offense. The district judge noted in his Order denying Strickland's motion to dismiss the indictment that the Magistrate Judge later recognized she had been mistaken in her belief that attempt to possess with intent to distribute was not cognizable under 18 U.S.C. § 846. (ROA at 76, n.6.)  In any event, a week later, on September 7, 2005, Strickland was arraigned and entered a plea of not guilty to the charge in the indictment.  There is no basis for an appeal as it relates to this issue and Strickland's concerns about it in his *pro se* brief have no merit.

[4]Strickland apparently seeks to assert a constitutional challenge to his sentence on due process grounds, and not a challenge to the validity of his conviction.  *See* Appellant's Opening Brief, at p. 12 ("A constitutional challenge to a sentence is reviewed de novo." (citation omitted)).  The doctrine of sentencing entrapment, however, typically arises in the context of downward departures under the Guidelines.  The separate legal doctrine of "outrageous Governmental conduct" analyzes the Government's behavior in inducing the crime which may, if egregious, violate due process.  *United States v. Russell*, 411 U.S. 423, 431-32 (1973).  This doctrine acts as a bar to the conviction of a defendant; it is not a defense to sentencing.  *Id*.; s*ee also United States v. Bussell*, 226 F. App'x 393, 396-99 (6th Cir. 2008) ("Normally, outrageous Governmental conduct is framed as a defense to criminal charges by which a 'defendant argues that the Government's involvement in creating his crime (i.e., the means and degrees of inducement) was so great that a criminal prosecution for the crime violates the fundamental principles of due process.'") (citing *United States v. Warwick*, 167 F.3d 965, 974 (6th Cir.1999) (internal quotations omitted)).

"The concept of sentencing entrapment is an offshoot of the subjective theory of entrapment, mainly applied in narcotics cases under the [then-mandatory] federal sentencing guidelines." *Sosa v. Jones*, 389 F.3d 644, 649 (6th Cir. 2004).[5] "[S]entencing entrapment occurs where outrageous Government conduct overcomes the will of a defendant predisposed to deal only in small quantities of drugs, for the purpose of increasing the amount of drugs and the resulting sentence imposed against that defendant." *Id*. (quoting *United States v. Williams,* 109 F.3d 502, 512 (8th Cir. 1997) (citations and internal quotation marks omitted)).

Sentencing entrapment focuses on the defendant's lack of predisposition to commit the greater offense. *United States v. Sanchez*, 138 F.3d 1410, 1414 (11th Cir. 1998). Sentencing factor manipulation, a term Strickland uses interchangeably with entrapment, "focuses on the Government's conduct. 'It requires us to consider whether the manipulation inherent in a sting operation, even if insufficiently oppressive to support an entrapment defense, . . . or due process claim, . . . must sometimes be filtered out of the sentencing calculus.'" *Id.* at 1414 (quoting *United States v. Connell*, 960 F.2d 191, 194 (1st Cir. 1992)).

This Court has neither expressly adopted nor disavowed the doctrines of sentencing entrapment or sentencing manipulation. *See United States v. Watkins*, 179 F.3d 489, 503 n.14 (6th Cir. 1999) ("We note that this court has yet to acknowledge that sentencing entrapment, even if proven, constitutes a valid basis for a downward departure."); *United States v. Landers*, 2003 WL

---

[5]In *United States v. Staufer*, 38 F.3d 1103, 106-07 (9th Cir. 1994), the court noted that the concept of sentencing entrapment developed in response to perceived abuses of the restrictive scheme of the federal sentencing guidelines. When the doctrine has been applied, courts use sentencing entrapment as a basis for a downward departure under the Guidelines. The concerns advanced by the doctrine seem less compelling, however, in a post-*Booker* era in which trial judges have greater discretion to address all matters related to sentencing and juries are required to find all sentencing enhancement factors affecting the statutorily mandated sentencing range beyond a reasonable doubt.

202176, 58 F. App'x 108, 110 (6th Cir. 2003) ("[T]he Sixth Circuit has yet to adopt the concept of 'sentencing manipulation,' or the continued purchase of illicit drug quantities so as to drive up the sentencing exposure of the defendant."); *Sosa,* 389 F.3d at 649 (acknowledging doctrine of sentencing enhancement as explained by other courts, but not specifically recognizing or adopting it); *United States v. Gardner*, 488 F.3d 700, 716-17 (6th Cir. 2007) ("[N]either this court nor the Supreme Court officially has recognized the theory of sentencing entrapment.")

Despite Strickland's invitation to do so now, this Court need not, in the context of this case, formally adopt these ameliorative doctrines. The evidence demonstrates that Strickland was predisposed to commit the greater offense of attempted possession with intent to distribute five kilograms of cocaine. Strickland's cousin, Dexter, introduced Strickland to the Atlanta confidential informant/drug dealer, Timothy Jones, for the purpose of entering into a drug transaction. From the outset, Strickland informed Jones and his purported supplier, Agent Rios, that he was selling kilogram quantities of cocaine in the Detroit area and wanted to purchase five kilograms. Throughout the reverse sting operation, Strickland repeatedly communicated his intention to purchase a portion of the drugs and to have the remaining quantity "fronted" to him for repayment with the proceeds of the drug resales. He negotiated with the agents for five kilograms and agreed to pay a $40,000 downpayment. On the day of the final transaction, he explained that he had only $20,000, which he gave to Ramierez. He left the restaurant and picked up what he believed to be five kilograms of cocaine.

In this case, the undercover agents did not decide beforehand the type or amount of drugs Strickland would buy; Strickland bargained for five kilograms of cocaine. The agents did not, for instance, suggest that Strickland bring a weapon to the transaction, continue the operation to include

more drug deals or otherwise manipulate the defendant into conduct that would enhance his sentence or increase his punishment. Manipulative tactics such as these have, in fact, prompted courts to decrease a defendant's sentence using the doctrine of sentencing entrapment. In those cases, courts exclude from the offense level that amount of drugs the defendant establishes he or she was not predisposed to purchase, or discount conduct that he or she was not inclined to do without inappropriate Government encouragement. Here, by contrast, the evidence supports the conclusion that Strickland was predisposed to commit the crime of attempted possession with intent to distribute five kilograms of cocaine, obviating the necessity to apply the concept of sentencing entrapment to adjust his sentence.

**B.      Continuance and Speedy Trial**

Strickland also contends that the trial court abused its discretion in granting an ends-of-justice continuance of the trial date that resulted in a violation of his right to a speedy trial. The district court granted the Government's request for a continuance based on the representations that the case agent, Special Agent Patrick Caldwell, was unavailable because he was scheduled to appear in another four-week trial.

Under the terms of the Speedy Trial Act, in any case in which a plea of not guilty is entered, the trial of a defendant charged in an indictment "shall commence within seventy days from the filing date (and making public) of the . . . indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). Any period of delay resulting from a continuance is deemed excludable delay for the purposes of the Speedy Trial Act if the judge finds, in accordance with 18 U.S.C. § 3161(h)(7)(A), that the interests of justice outweigh the best interests of the Defendant and the

public in a speedy trial. The factors, among others, that a judge must consider in determining whether to grant an ends-of-justice continuance are as follows:

(i)      Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

(ii)     Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

(iii)     Whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section 3161(b), or because the facts upon which the grand jury must base its determination are unusual or complex.

(iv)     Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(7)(B).[6]

Following the return of the indictment on August 17, 2005, the defense filed several pretrial motions that caused periods of delay that were excluded in the speedy trial computation. On October 3, 2006, the Government notified the district court that the case agent was unavailable and asserted that he was an essential witness. The Government moved for a continuance pursuant to 18 U.S.C. § 3161(h)(3)(A), which provides that a period of delay resulting from the absence or

---

[6]The district court conducted its analysis under former 18 U.S.C. § 3161(h)(8)(B). Congress subsequently amended and renumbered this provision as subsection (7).

unavailability of an essential witness "shall be excluded in computing the time within which . . . the trial of any such offense must commence." Strickland opposed the motion for a continuance, although he did not move for a dismissal of the indictment.[7]

Strickland maintains that the Government failed to demonstrate that Agent Caldwell was required to be at the other trial continuously or during the time he would be required to testify in the instant case. He contends that another agent, such as Agent Rios, could have served as case agent, and that Agent Caldwell's actual testimony at trial was brief, undercutting the Government's prior assertion that he was an essential witness.[8]

The decision of whether to grant an ends-of-justice continuance under the Speedy Trial Act is within the sound discretion of the district court. *United States v. Howard*, 218 F.3d 556, 563 (6th Cir. 2000).[9] A defendant must prove actual prejudice to obtain a reversal on appeal of the trial

---

[7]If the Speedy Trial Act deadline is not met, as extended by Section 3161(h), the district court must dismiss the indictment, either with or without prejudice. 18 U.S.C. § 3162(a)(2). Because the district court found no violation of the Speedy Trial Act, it did not address whether a dismissal should have been with or without prejudice.

[8]The Government notes, however, that Agent Caldwell testified to supervising the Detroit confidential informant, including surveillance and attempting to record the July 30 and August 4, 2004 meetings, and introduced into evidence the suitcase and packages of "drugs."

[9]A district court's legal conclusions and construction of the Speedy Trial Act are reviewed *de novo*. *United States v. Howard*, 129 F.3d 1266 (Table), 1997 WL 705077, *3-*4 (6th Cir. Nov. 6, 1999) (collecting cases). The trial judge's findings under the Speedy Trial Act that a continuance would best serve the ends of justice, however, is a factual determination. If the district court properly explains its rationale for the continuance, this Court applies an abuse of discretion standard. *United States v. Howard*, 218 F.3d 556, 563 (6th Cir. 2000).
 In his Reply Brief, Strickland suggests that this Court engages in a "modified abuse of discretion standard" when reviewing an alleged speedy trial violation. That standard, however, is employed to determine whether a district court properly dismissed an indictment with or without prejudice. A district court that does not set forth written findings containing certain statutory factors before dismissing an indictment with prejudice is subject to a modified abuse of discretion standard. *See, e.g., United States v. Pierce*, 17 F.3d 146, 148 (6th Cir. 1994).

-11-

judge's decision to grant a continuance. *United States v. Monger*, 879 F.2d 218, 221 (6th Cir. 1989).

As required by the statute, the district court affirmatively set forth and weighed the appropriate § 3161(h)(7) factors. The court provided a rationale for granting the continuance in a written order, which clearly set forth several bases for postponing the trial date. The district court offered both the ends of justice exception and the unavailable-witness exception as rationales for the continuance. The court found that Agent Caldwell was essential to the Government's prosecution of the case and was not available. Although Strickland asserts that Agent Caldwell was not essential, he has cited to no authority to support this proposition and failed to demonstrate that he was prejudiced in the preparation of his defense as a result of the continuance due to the case agent's unavailability.

The district court also noted that it had been "advised by both the Government's and Defendant's attorneys" that they had a number of other previously scheduled matters rendering them unavailable for trial until the end of November. (ROA at 123.) Accordingly, the district court determined that "failure to grant a continuance until the end of November would unreasonably deny Defendant and the Government continuity of counsel or would deny both defense counsel and the attorney for the Government the reasonable time necessary for effective preparation for trial." (ROA at 123.) Although the Government requested a four-week continuance of the trial due to the agent's unavailability, the district court granted an eight-week ends-of-justice continuance to accommodate the schedules of both Strickland's counsel as well as counsel for the Government. Strickland's trial was reset to and began on November 28, 2006.

The district court did not err in ruling that the ends of justice would be served by the continuance, and that it constituted excludable delay.  These findings are, therefore, affirmed.

**C.      Substantial Step in Furtherance of the Charged Drug Offense**

Strickland contends that the Government failed to prove that he took a substantial step towards the commission of the attempt charge.  He asserts that the district court erred in failing to grant his motion to dismiss the indictment in which he asserted that his conduct failed to demonstrate that the parties had reached a meeting of the minds as to such matters as price, quality, volume, and other details of the drug transaction.  Strickland emphasizes that he dealt exclusively with law enforcement agents and confidential informants working at the direction of these officers, and, therefore, could not have taken a "substantial step" toward the commission of the offense because he could never possess actual narcotics.  He further contends that, because no real drugs or drug dealers were involved in the sham offense, he cannot be accountable for an attempt to commit a drug crime.  Essentially, Strickland asserts the defense of impossibility.

Prior to trial, Strickland filed a motion to dismiss the indictment, setting forth these same legal arguments.  The district court denied the motion.  In particular, the district court rejected Strickland's contentions that he may not be convicted of attempt to possess with intent to distribute cocaine because the substance was an imitation, not actually a controlled drug.  The court's ruling is supported by *United States v. Pennell*, 737 F.2d 521, 525 (6th Cir. 1984) ("[T]he purchase of a noncontrolled substance that the defendant subjectively believes to be a controlled substance can constitute an attempt to possess with intent to distribute under § 846.").  The district court also found no merit to Strickland's assertion that he could not be convicted of attempt to possess with intent to distribute because the parties had no "meeting of the minds" as to the quantity and total price of

-13-

the cocaine. The trial court found that even if Strickland did not take actual, physical possession of the sham cocaine, he still may be found to have taken a "substantial step" for purposes of the attempt offense when his conduct, taken as a whole, corroborates a subjective intent to possess the drugs. These conclusions are well established in this Court's precedent. **S**ee, e.g., *United States v. Pennyman*, 889 F.2d 104, 107 (6th Cir. 1989).

As to Strickland's contention that the district court erred in denying his motion to dismiss, his claim is without merit. The district court correctly applied the law and properly rejected Strickland's assertions.[10]

To the extent that Strickland challenges the sufficiency of the Government's proof that he committed an overt act, that assertion, too, is not supported by the evidence. This Court reviews a "challenge to the sufficiency of the evidence by considering the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir.1999); *United States v. Blackwell*, 459 F.3d 739,760 (6th Cir. 2006) (same). Here, ample evidence exists to support Strickland's conviction for attempt to possess with intent to distribute a controlled substance.

In order to prove an attempt to commit a drug offense, the Government must establish two essential elements: (1) the intent to engage in the prohibited criminal activity, and (2) the commission of an overt act that constitutes a substantial step towards commission of the proscribed

---

[10]In his opening Brief, Strickland framed his position as an appeal of the district court's decision denying his motion to dismiss the indictment. In his Reply, Strickland restructured his position as a challenge to the sufficiency of the Government's evidence regarding the attempt conviction. The cases cited by the district court and Strickland's defense of impossibility to his attempt offense are discussed below in the context of his contention that the Government failed to prove he took a substantial step towards the commission of the crime.

criminal activity. *United States v. Pennyman*, 889 F.2d 104, 106 (6th Cir. 1989) (citing *United States v. Reeves*, 794 F.2d 1101, 1104 (6th Cir. 1986)). The substantial step must be comprised of objective acts that "mark defendant's conduct as criminal in nature." *Id*. (internal quotation marks and citation omitted); *see also United States v. Bilderbeck*, 163 F.3d 971, 975 (6th Cir. 1999) (same). "The defendant's objective conduct, taken as a whole, must unequivocally corroborate the required subjective intent to purchase or sell actual narcotics." *Bilderbeck*, 163 F.3d at 975. Under the "substantial step" analysis, this Court assesses "whether any reasonable person could find that the acts committed would corroborate the firmness of a defendant's criminal intent, assuming that the defendant did, in fact, intend to commit the crime." *Id*.

*United States v. Pennell*, 737 F.2d 521 (6th Cir. 1984), forecloses Strickland's argument that imitation narcotics cannot form the basis of conviction for attempted possession with intent to distribute a controlled substance. In *Pennell*, the defendant asserted that he could not be convicted of attempt to possess with intent to distribute cocaine because the substance he attempted to purchase from the undercover agents, in fact, was "sham" cocaine. As this Court explained, Pennell's defense is essentially one of impossibility that Congress intended to eliminate in cases prosecuted under 21 U.S.C. §§ 841(a)(1) and 846. *Id*. at 525. The Court held that "the purchase of a noncontrolled substance that the defendant subjectively believes to be a controlled substance can constitute an attempt to possess with intent to distribute under § 846." *Id*. The authority in this Circuit for this proposition is firm. *Pennyman*, 889 F.2d at 107 (holding that a defendant may be found to have taken a "substantial step" for the purpose of an attempt offense even though he or she has failed to gain possession of drugs or "sham" drugs); *Bilderbeck*, 163 F.3d at 976 ("[A] a purchase is obviously not necessary for a conviction for attempted possession of narcotics.").

Strickland's assertion that this long line of cases is distinguishable because the Government controlled every aspect of the "attempted" transaction at issue here is supported by neither the facts of this case nor this Court's unfaltering precedent. Strickland actively sought five kilograms of cocaine, negotiated the price, made a partial payment, and took possession of the imitation drugs. Moreover, *Pennell* and *Bilderbeck* each involved reverse-buy operations controlled by the Drug Enforcement Administration, and emphasized the important law enforcement function of the DEA's policy to use imitation rather than real drugs in these dangerous transactions.

This Court has held that "when a defendant engages in active negotiations to purchase drugs, he has committed the "substantial step" towards the crime of possession required to convict him of attempted possession." *Bilderbeck*, 163 F.3d at 971. Here, Strickland's active negotiations to purchase the cocaine strongly corroborate the firmness of his intent to possess it. These negotiations, together with the objectively overt acts of actively soliciting participation in the drug transaction, paying the person he believed to be a drug supplier $20,000 in cash, and carrying away a suitcase that he believed contained five kilograms of cocaine mark his conduct as criminal in nature and comprise a substantial step towards the commission of the offense.

### III.

Because Strickland actively negotiated for a five-kilogram quantity, and exhibited that he was predisposed to purchase a higher quantity than one kilogram of cocaine, the Government did not engage in sentencing entrapment. Further, the district court did not abuse its discretion when it granted an ends-of-justice continuance over Strickland's speedy trial objection. Finally, Strickland solicited the drug transaction and paid an undercover informant $20,000 towards the purchase of the negotiated cocaine quantity. His suggestion that he failed to take a substantial step towards

-16-

completion of the transaction is without merit.  Because Strickland has provided no basis to overturn the jury's verdict, we **AFFIRM.**