UNITED STATES of America,
Plaintiff–Appellee,

v.

Ronald BILDERBECK, Defendant–
Appellant.

No. 97–1700.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 27, 1998.

Decided Jan. 5, 1999.

Michael R. Carithers, Jr. (argued and briefed), E. James King, Office of U.S. Attorney, Detroit, Michigan, for Plaintiff–Appellee.

James C. Howarth (argued and briefed), Detroit, Michigan, for Defendant–Appellant.

Before: BOGGS, SUHRHEINRICH, and SILER, Circuit Judges.

## OPINION

BOGGS, Circuit Judge.

Defendant-appellant Ronald Bilderbeck appeals his jury conviction for attempted possession of cocaine with intent to distribute, contending that his negotiations for a drug deal could not have been a "substantial step" toward possessing the cocaine. We hold that a jury could easily have found that Bilderbeck's active negotiations to acquire the cocaine constituted a "substantial step" towards possession and thus affirm Bilderbeck's conviction.

## I. FACTS AND PROCEDURAL HISTORY

Ronald Bilderbeck, an alleged drug "middleman," came under the suspicion of the Drug Enforcement Agency ("DEA") when a drug courier, Raul Ruiz, was arrested on February 2, 1996. While driving his motor home, Ruiz was stopped for a traffic violation on Interstate 70 in Utah. The arresting officer discovered that Ruiz was carrying approximately 28 kilograms of cocaine. Ruiz told the officer that he was transporting the cocaine to Detroit to distribute it to several individuals, one of whom was Bilderbeck. The DEA permitted him to plead guilty to a crime in Utah state court in exchange for his cooperation with the agency.

Ruiz called Bilderbeck from Utah on February 14, 1996, pursuant to DEA instructions, to indicate he was bringing "white doors" (cocaine) to Detroit; Bilderbeck responded, "I'll take them all [the cocaine] as long as the price is fair." The DEA decided to set up a "sting" operation at the Skyline Inn in Taylor, Michigan, in which Ruiz and an undercover DEA agent would attempt to get Bilderbeck to purchase cocaine.

Upon his arrival in the Detroit area on the morning of February 16, 1996, Ruiz called Bilderbeck to tell Bilderbeck he was at the Inn with the cocaine. Accompanying Ruiz in a room at the Inn was the undercover DEA agent, who had twenty-six kilograms of cocaine in his possession.[1] During previous transactions, Ruiz had "fronted"[2] Bilderbeck drugs. However, the undercover agent told Ruiz that, on this occasion, Bilderbeck would have to have money ready for Ruiz when Bilderbeck took possession of the cocaine.

Bilderbeck arrived at the Inn at 12:58 p.m. that day.[3] When Ruiz told Bilderbeck that he would not front Bilderbeck cocaine, Bilderbeck objected, insisting that his customers had to receive and sample the cocaine first before he could pay for the drugs. Bilderbeck asked to sample the cocaine, and the undercover agent handed Bilderbeck a pocket knife, which Bilderbeck used to cut open one of the cocaine bricks. Bilderbeck scooped some of the cocaine into his hand, sampled it, and remarked, "It tastes good."

Ruiz and the undercover agent pressed Bilderbeck to state how much cocaine he intended to purchase. Bilderbeck changed his mind several times, providing varying answers ranging from "two or three" kilos to "all of them." The undercover agent later testified that, during this meeting, the parties "did not make an agreement on price."[4] Bilderbeck stated that he would return to the Inn at around 6 p.m.; at that time, he would "know what he needs." Bilderbeck left the Inn at 1:21 p.m., after indicating, "All I gotta do is get a hold of them [his customers] . . . make sure they're not holding."

DEA agents had Bilderbeck under surveillance. At approximately 5 p.m., Bilderbeck unsuccessfully tried to lose monitoring DEA agents through "counter-surveillance" driving. From 5:45 p.m. to 6 p.m., Bilderbeck met another individual at a Livonia, Michigan strip mall. The two had a conversation inside Bilderbeck's vehicle. At 6:02 p.m., Bilderbeck again called Ruiz at the Skyline Inn, indicating that he "just went and talk[ed] to my friend. . . . He just got off work."

Bilderbeck returned to the Inn at approximately 6:20 p.m. He indicated his desire to take possession of the cocaine to Ruiz, stating, "I have to take it. . . . They've got to take it, pick up the cash and bring it back. . . . If [the undercover agent] wants to trust me I'll take care of [the cocaine]."[5] He

---

1. This was apparently the same cocaine that had been seized from Ruiz in Utah.

2. When a drug supplier "fronts" drugs to a "middleman" or a dealer, he gives him the cocaine immediately but does not expect payment until later. This permits the dealer to sell the drugs to his customers and then use the proceeds from these sales to pay the supplier.

3. All activity in the room at the Skyline Inn that day was videotaped by the DEA. The videotape was introduced at trial.

4. However, according to Ruiz, Bilderbeck and Ruiz's "boss," Tony Geneste, had a conversation in December 1995 where Geneste indicated that the price of cocaine transported by Ruiz on "future trips" would be $22,000 per kilogram. According to Ruiz, Geneste "was the [ultimate] owner of the coke."

5. The undercover agent was not in the room during this meeting.

explained that suppliers normally fronted him cocaine, which he would then sell to his customers. He would store the money he collected in return at the home of one of his daughters, where a supplier would then go to pick up the money. Ruiz responded that he did not have permission to front him the drugs. Bilderbeck left the Inn at 6:36 p.m. He then placed a call to Ruiz at approximately 7 p.m. indicating that one of Bilderbeck's customers would let him know "what he needs" by 8 or 8:30 p.m.

Bilderbeck came back to the Inn for the last time at 8:35 p.m. He again indicated his desire to take the cocaine, noting that three or four customers were interested in seeing the drugs. During this final meeting,[6] Ruiz telephoned the undercover agent (who was elsewhere) to inquire what the DEA's current "position" on fronting the drugs was; the agent indicated that the DEA was now willing to front the cocaine to Bilderbeck.[7] Bilderbeck, however, suddenly changed his mind, indicating that he did not want to take possession of the cocaine because it was too late to distribute it that day; however, he asked Ruiz to save some of the drugs for him to pick up the next day. Bilderbeck told Ruiz, "If you had given me [the cocaine earlier] I would have shown them [the cocaine bricks] to four other people and had half a dozen of them out . . . if [the undercover agent] had given them to me. . . . I would have had them gone."

Bilderbeck left the Inn for the last time at 8:43 p.m., never taking ·possession of the cocaine, and proceeded to a bar in Detroit. From the bar, he called Ruiz at 9:12 p.m. and told Ruiz that some of his customers were "getting some bids on some prices . . . but they won't know anything until a little bit later, one guy needed ten [kilos], one guy needed fifteen [kilos]." He added, "Today's shot . . . but we can do it tomorrow and have all the money Sunday."

The DEA ended the "sting" at 9:30 p.m. The agents gave up trying to "do a deal" because they "felt that it was in the best

interest to us just to acquire a warrant and arrest Mr. Bilderbeck."

Bilderbeck was indicted by a federal grand jury on May 21, 1996, on a single count of attempting to distribute and to possess with intent to distribute cocaine on February 16, 1996, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Before trial, the government presented a motion in limine to prohibit Bilderbeck from inquiring during trial about (a) Ruiz's cooperation in other cases and (b) the federal penalties that Bilderbeck potentially faced (presumably, for the purpose of comparing Bilderbeck's potential penalties to the punishment Ruiz received). The motion was granted.

The government also submitted a memorandum in support of a motion to permit it to offer evidence of three prior drug transactions between Ruiz and Bilderbeck, as being in conformity with FED. R. EVID. 404(b). Bilderbeck objected, arguing that the introduction of such evidence was not necessary since he was prepared to stipulate that he intended to possess the cocaine. The motion was granted.

At the close of the government's case, Bilderbeck moved for the entry of a judgment of acquittal pursuant to FED.R.CRIM.P. 29, on the ground that the government failed to prove that an attempt crime had occurred. The motion was denied. Bilderbeck was found guilty by the jury on December 18, 1996, and later sentenced to a term of 240 months of imprisonment, to be followed by ten years of supervised release. He now appeals.

## II.   ANALYSIS

### A.   Substantial step

Bilderbeck's primary argument on appeal is that he did not commit a "substantial step" towards the crime of possession of cocaine with intent to distribute. He believes that the trial court erred in denying his Rule 29 motion for acquittal, contending that his ac-

---

6.   The undercover agent was also not in the room during this meeting.

7.   This was because, according to the agent, "we weren't gaining much [to] be letting it go on

farther and farther .... [w]e would go ahead and give [the cocaine] to [Bilderbeck] and he'd be immediately arrested when he left the hotel room."

tions constituted nothing more than "talking about getting the cocaine," and that no affirmative steps were ever taken by him to obtain physical control of the cocaine.

We have held that the term "attempt" is to be construed in a "broad and all inclusive manner." *United States v. Reeves,* 794 F.2d 1101, 1103 (6th Cir.), *cert. denied,* 479 U.S. 963, 107 S.Ct. 463, 93 L.Ed.2d 408 (1986). For an individual to be convicted of an attempt crime, the government must demonstrate a defendant's intent to commit the proscribed criminal conduct together with the commission of an overt act that constitutes a substantial step towards commission of the proscribed criminal activity. *United States v. Shelton,* 30 F.3d 702, 705 (6th Cir. 1994). The "substantial step" requirement was first announced in the Fifth Circuit case of *United States v. Mandujano,* 499 F.2d 370 (5th Cir.1974), *cert. denied,* 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975), which defined a substantial step as "conduct strongly corroborative of the firmness of the defendant's criminal intent." *Id.* at 376.

A defendant may be found to have taken a "substantial step" for the purpose of an attempt conviction though he or she has failed to gain possession of drugs or "sham" drugs. *United States v. Pennyman,* 889 F.2d 104, 107 (6th Cir.1989). Because of the problems of proving intent in attempt cases and the danger of convicting for mere thoughts, desires, or motives, we require that the substantial step consist of objective acts that mark the defendant's conduct as criminal in nature. *Id.* at 106. The defendant's objective conduct, taken as a whole, must unequivocally corroborate the required subjective intent to purchase or sell actual narcotics. *Id.*

The key word in the holdings from *Pennyman* is *"objective"*: the "substantial step" requirement is an objective requirement, not a subjective one. In other words, under the "substantial step" analysis, an appellate court evaluates whether any reasonable person could find that the acts committed would corroborate the firmness of a defendant's criminal intent, assuming that the defendant did, in fact, intend to commit the crime. The requirement does not mandate that the activ-

ity constituting a substantial step must be *sufficient* to prove that the defendant had the subjective, specific intent to commit a crime. The intent may need to be proven separately.

This point is best illustrated by a hypothetical. A penniless young man, while walking through a city park, is asked to purchase drugs. To further his own misguided pursuit of personal amusement, the man engages in active negotiations with the drug dealer to purchase drugs, fully knowing that he could never consummate the sale. These negotiations, even though they would not establish the man's subjective intent to buy the drugs, no doubt do constitute a "substantial step" towards the commission of a crime of possession, for these negotiations would, objectively, corroborate the firmness of a defendant's criminal intent.

This, of course, does not mean that the young man in our hypothetical is guilty of an attempt crime—the government must still fulfill its burden to establish that he had the *specific intent* to purchase the drugs. The young man would, no doubt, argue that the fact he was (1) penniless and (2) prone to amusing himself in unconventional ways served as strong evidence that he did not, in fact, intend to possess the drugs. The point is, however, that these two inquiries are, ultimately, separate ones. A defendant cannot argue that overt acts on his part did not constitute a "substantial step," even though a reasonable person would believe that they were strongly corroborative of the firmness of an actor's criminal intent, on the ground that his acts did not *prove* his subjective intent. The acts alleged need only corroborate (*i.e.,* confirm) his intent; they are not the *sole evidence* on which the government can rely to establish that a defendant specifically intended to commit a crime.

Therefore, we hold that when a defendant engages in active negotiations to purchase drugs, he has committed the "substantial step" towards the crime of possession required to convict him of attempted possession. We simply cannot contemplate a situation where a defendant's active negotiations to purchase drugs would not strongly corroborate the firmness of his intent to pos-

sess narcotics, assuming he had such an intent. This does *not* mean that any defendant who engages in active negotiations to purchase narcotics has committed an attempt crime; as we pointed out in our earlier hypothetical, the government must still prove a defendant's *intent* to possess narcotics.

Our holding today is consistent with past precedent in this Circuit. In particular, the facts of *Pennyman,* where this court upheld a defendant's conviction for attempting to possess cocaine based primarily on surveillance and wiretap evidence, are strikingly similar to those in the present case. In *Pennyman,* the jury heard the tape of a forty-five minute conversation between the defendant and a cocaine dealer. 889 F.2d at 108. This conversation did not even consist of active negotiations surrounding a proposed drug deal; it simply covered drug-related topics, such as a past drug deal, the danger posed by a customer's boasts about her drug source, and the importance of the defendant maintaining a "square image" so that "nobody be the wiser." *Ibid.* This court nonetheless found that this behavior constituted a "substantial step" towards the crime of possession. *See id.* at 107–08.

The case of *United States v. Williams,* 704 F.2d 315 (6th Cir.1983), *cert. denied,* 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983), is also instructive. In *Williams,* as police officers were searching an individual's residence, the defendant phoned and told an officer who had answered the phone that he wanted to buy some "snow." *Id.* at 316. The officer told him to come over and pick it up. Upon his arrival at the residence, the defendant was arrested and found to possess $3,400 in cash and a handgun. This court held that "in the absence of police intervention," the defendant would have consummated the substantive crime. *Id.* at 321. We then held that the defendant's conduct was sufficient to meet the "substantial step" requirement. *See ibid.*

The First Circuit has held that negotiations virtually indistinguishable from those in the instant case constituted a "substantial step." *United States v. Dworken,* 855 F.2d

12, 19 (1st Cir.1988). In *Dworken,* the court held that a defendant's "continuous and serious offers" regarding "price, quality, volume, and location," as well as his "view[ing of] a sample of" narcotics, established that he "was prepared to make the deal, as long as [an undercover DEA agent] agreed to his terms." *Id.* at 15, 19. In the court's judgment, this activity not only established that the defendant had committed a "substantial step," but also "satisfied the government's burden of showing the requisite intent." *Id.* at 19–20. The *Dworken* court rejected the defendant's argument that the negotiations constituted "mere preparation," noting that "that the important question is not whether something constitutes 'preparation' or 'attempt,' but whether the behavior does strongly corroborate clear criminal intent." *Ibid.*

■ Bilderbeck contends that his negotiations did not constitute a "substantial step," since the parties never reached an agreed-upon price and quantity during the negotiations. However, a purchase is obviously not necessary for a conviction for *attempted* possession of narcotics. The indictment in this case charged Bilderbeck with attempting to *possess* cocaine, not attempting to *buy* it. There clearly can be situations where two parties negotiate a drug deal and money does not change hands. Indeed, the present case presents such a situation: Bilderbeck was trying to get Ruiz to front him cocaine so that he could "shop" the drugs to his customers, and then pay Ruiz back at a later date.

In the present case, Bilderbeck drove to the Skyline Inn with the purpose of picking up the cocaine; tasted the cocaine to ascertain its purity (not simply viewed the drugs, as in *Dworken* ); tried to convince Ruiz and the undercover agent to front him the cocaine, as Ruiz had done during previous drug transactions; argued with Ruiz and the undercover agent over the quantity of drugs he ultimately wanted to purchase; and indicated several times that he was soliciting bids for the cocaine from potential customers.[8] Considering the evidence as a whole in a light most favorable to the government, we con-

---

8. Bilderbeck also hints in his brief that he may have abandoned his efforts to possess cocaine. We do not need to reach the issue of abandonment, since Bilderbeck clearly did not abandon

his efforts at possession. In fact, he told Ruiz, "Today's shot ... but we can do it [the deal] tomorrow and have all the money Sunday."

clude that a rational trier of fact could have found that these acts constituted active negotiations to purchase drugs and, thus, that Bilderbeck had undertaken a "substantial step" towards possession of the cocaine.[9]

## B. Introduction of "prior acts" evidence

Bilderbeck also contends that the district court improperly admitted evidence of his prior drug dealings with Ruiz under FED. R. EVID. 404(b). This court outlined the standard of review for the admission of 404(b) evidence in *United States v. Comer*, 93 F.3d 1271 (6th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 595, 136 L.Ed.2d 523 (1996):

> Reviewing the admission of Rule 404(b) evidence involves a three-step analysis. First, we review for clear error the district court's factual determination that sufficient evidence exists that the other acts occurred. Second, we review de novo whether the district court correctly determined that the evidence was admissible for a legitimate purpose. Third, we review for abuse of discretion the district court's determination that the "other acts" evidence is more probative than prejudicial under Rule 403.

*Id.* at 1277 (citations omitted).

Bilderbeck does not question the district court's determination that sufficient evidence exists that the past drug deals occurred. However, he does question the trial court's determination that the evidence was admitted for a legitimate purpose. Under Rule 404(b), prior acts evidence may be admitted to prove, *inter alia*, "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." Bilderbeck claims that he was willing to stipulate that he intended to at-

tempt to possess the cocaine and, thus, the evidence of the prior drug dealings was not admitted for a legitimate purpose, but rather just to paint him as a "bad man." The government argues that, even if Bilderbeck stipulated intent, the evidence of prior acts is still admissible to demonstrate intent.

The government is correct. This court has already held that where the crime charged is one requiring specific intent, the prosecutor may use 404(b) evidence to prove that the defendant acted with the specific intent notwithstanding that the defense was lack of possession, not lack of intent to distribute. *See United States v. Johnson*, 27 F.3d 1186, 1192–93 (6th Cir.1994), *cert. denied*, 513 U.S. 1115, 115 S.Ct. 910, 130 L.Ed.2d 792 (1995). We believe that allowing the introduction of evidence under 404(b) to prove specific intent despite the defense's failure to contest intent is little different from allowing such evidence where the defendant stipulates to an element of the crime. The raising of a defense that makes one element of a crime a non-issue and the stipulation of an element to make it a non-issue are simply different means to accomplish the same end: the exclusion of the government's otherwise-admissible evidence.

Since this court has rejected one means to achieve this end, we now reject another means. As the Supreme Court noted in *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), "[T]he accepted rule that the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away rests on good sense. A syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it." 117 S.Ct. at 654.[10]

---

9. Bilderbeck's intent to possess is not at issue on appeal, since he concedes that he in fact intended to possess cocaine.

10. The *Old Chief* court ultimately held that evidence about the nature of a defendant's prior conviction was not admissible to prove the prior felony conviction element of the offense of possession of firearm by a felon. 117 S.Ct. at 655–56. The Court stated that its "recognition that the prosecution with its burden of persuasion needs evidentiary depth to tell a continuous story has, however, virtually no application when the point at issue is a defendant's legal status, depen-

dent on some judgment rendered *wholly independently* of the concrete events of later criminal behavior charged against him." 117 S.Ct. at 654–55 (emphasis added). The prior acts in this case were clearly *related to* the concrete events of later criminal behavior. The intent with which a person commits an act on a given occasion can many times best be proven by testimony or evidence of his acts over a period of time prior thereto, particularly when the activity involves a continuous course of dealing. *See United States v. Harrison*, 679 F.2d 942, 948 (D.C.Cir.1982).

Our holding that prior acts evidence may be admissible under 404(b) to prove required specific intent, even if a defendant stipulates to intent, is supported by decisions in all of the circuits that have ruled on the issue after the issuance of *Old Chief. See, e.g., United States v. Crowder,* 141 F.3d 1202, 1209 (D.C.Cir.1998) (holding "in light of *Old Chief* ... that a defendant's offer to stipulate to an element of an offense does not render the government's other crimes evidence inadmissible under Rule 404(b) to prove that element...."); *United States v. Queen,* 132 F.3d 991, 997 (4th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1572, 140 L.Ed.2d 805 (1998) (holding post-*Old Chief* that "the government, which has the burden of proving every element of the crime charged, must have the freedom to decide how to discharge that burden....")

■■■ Bilderbeck also implies that the trial court erred in conducting the probativeness-versus-prejudice balancing of the prior acts evidence outlined in FED. R. EVID. 403. We review for abuse of discretion the district court's determination that the "other acts" evidence is more probative than prejudicial under Rule 403. *Comer,* 93 F.3d at 1277. It is well settled that a trial judge's discretion in balancing the probative value of evidence against its potential for unfair prejudice is very broad. *United States v. Dabish,* 708 F.2d 240, 243 (6th Cir.1983).

■■■ The admission of the prior acts evidence cannot be said to have been an abuse of discretion. The evidence was obviously highly . probative for demonstrating Bilderbeck's intent and, though the evidence was highly prejudicial to defendant, it cannot be said to have been *unfairly* prejudicial. Rule 403 states that "evidence may be excluded if its probative value is substantially outweighed by the danger of *unfair* prejudice...." We have interpreted "unfair prejudice" to mean the undue tendency to suggest a decision based on improper considerations; it does not mean the damage to a defendant's case that results from legitimate probative force of the evidence. *Sutkiewicz v. Monroe County Sheriff,* 110 F.3d

352, 360 (6th Cir.1997). In this case, the trial judge acted to prevent the jury from making a decision based on improper considerations by instructing it that the "past acts" evidence was relevant only for establishing Bilderbeck's intent, not for any other purpose. Even assuming *arguendo* that this evidence should not have been admitted, its admission would constitute harmless error in light of other proper and persuasive evidence concerning the same past acts. On the government's properly-admitted videotape depicting the encounters at the Skyline Inn, Bilderbeck makes comments referring to the same past acts that he wanted excluded from evidence.

Therefore, the admission of the prior acts evidence does not, in any way, constitute reversible error.

**C. Alleged right to cross-examine Ruiz about penalties**

■■■ Lastly, Bilderbeck claims that he was improperly limited in the scope of his cross-examination of Ruiz. He argues that "the government sought to prevent the jury from hearing [testimony by Ruiz about federal narcotics penalties in the Eastern District of Michigan] because the jury might relate that penalty to what Bilderbeck faced."[11]

■■■ The trial court's determinations of admissibility and relevancy depend on the exercise of sound judgment within the context of the entire trial. *United States v. Seago,* 930 F.2d 482, 494 (6th Cir.1991). The trial court's determination should not be disturbed absent a clear abuse of discretion. *Id.* The trial court's granting of the government's motion in limine cannot be said to be an abuse of discretion in light of the fact that Sixth Circuit Pattern Jury Instruction 8.05(2) states, "Deciding what the punishment should be is my job, not yours. It would violate your oaths as jurors to even consider the possible punishment in deciding your verdict." Pattern Jury Instructions of the Sixth Circuit, No. 8.05(2) (1991). Bilderbeck's argument is without merit.

11. The government presented a motion in limine requesting that defendant be prohibited from inquiring about (a) Ruiz's cooperation in other cases and (b) the federal penalties the Bilderbeck potentially faced. This motion was granted by the trial court.

## III. CONCLUSION

For the foregoing reasons, the district court's judgment of conviction is AFFIRMED.