RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0238p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

No. 17-5772

*v.*

JEFFERY HAVIS,

*Defendant-Appellant*.

---

Appeal from the United States District Court
for the Eastern District of Tennessee of Chattanooga.
No. 1:16-cr-00121-1—Travis R. McDonough, District Judge.

Argued: May 1, 2018

Decided and Filed: October 22, 2018

Before: DAUGHTREY, STRANCH, and THAPAR, Circuit Judges.

---

## COUNSEL

**ARGUED:** Jennifer Niles Coffin, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant. William Allen Roach, Jr., UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Jennifer Niles Coffin, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant. William Allen Roach, Jr., UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

THAPAR, J., delivered the opinion of the court in which STRANCH J., joined. STRANCH, J. (pp. 12–14), delivered a separate concurring opinion. THAPAR, J. (pp. 15–18), delivered a separate concurring opinion. DAUGHTREY, J. (pp. 19–20), delivered a separate dissenting opinion.

---
**OPINION**

---

THAPAR, Circuit Judge.  What we do is sometimes less important than how we do it. The United States Sentencing Commission has the power to promulgate the Sentencing Guidelines.  But Congress has limited how it may exercise that power.  Those limits are important—not only because Congress thinks so, but because they define the Commission's identity in our constitutional structure.

Jeffery Havis claims that the Commission has disregarded those limits.  And he may have a point.  But a prior published decision of our court requires that we reject this part of his argument.  Following that precedent and finding Havis's other arguments unavailing, we affirm his sentence.

I.

Jeffery Havis pled guilty to being a felon in possession of a firearm.  *See* 18 U.S.C. § 922(g)(1).  As it turns out, he had a lengthy criminal record.  And at sentencing, the district court concluded that his twenty-year-old state conviction for selling or delivering cocaine amounted to a "controlled substance offense" under the Guidelines and increased his base offense level accordingly.  U.S. Sentencing Guidelines Manual § 2K2.1(a)(4)(A) (U.S. Sentencing Comm'n 2016); *see* Tenn. Code Ann. § 39-17-417(a)(2)–(3) (2000).

Havis objected to the increase.  He argued that delivering cocaine does not qualify as a "controlled substance offense" and that it was unclear whether his state conviction was for delivery or sale.  The district court found this argument unavailing on account of this court's decision in *United States v. Alexander*, which held that any violation of the Tennessee statute at issue is a controlled substance offense.  686 F. App'x 326, 327–28 (6th Cir. 2017) (per curiam). The district court thus reasoned that it did not matter whether Havis was convicted of selling or delivering cocaine since both qualified as a basis to increase his sentence.  Havis now appeals, and we review the district court's decision de novo.  *United States v. Evans*, 699 F.3d 858, 862 (6th Cir. 2012).

II.

To determine whether delivering drugs in violation of Tennessee law is a controlled substance offense, we apply the categorical approach. *United States v. Woodruff*, 735 F.3d 445, 449 (6th Cir. 2013). Under this approach, we care not about the facts of Havis's actual misconduct but about the *elements* of drug delivery under Tennessee law. *Taylor v. United States*, 495 U.S. 575, 600–02 (1990); *Woodruff*, 735 F.3d at 449. Thus, our job is to match up the elements of Tennessee drug delivery with those of a "controlled substance offense" under the Guidelines and see if Tennessee criminalizes a broader range of conduct. *See Taylor*, 495 U.S. at 599–600; *Woodruff*, 735 F.3d at 449. If so, no match, and the district court erred by increasing Havis's base offense level. But if Tennessee drug delivery criminalizes the same (or a narrower) range of conduct, we have a match and the district court was right.

A.

Havis first argues that Tennessee drug delivery does not match up with a controlled substance offense under the Guidelines because the former includes *attempting* to transfer drugs, while the Guidelines only include *completed* controlled substance offenses. The problem for Havis, however, is that this court has already interpreted the Guidelines's definition of "controlled substance offense" to include attempts. *Evans*, 699 F.3d at 866–67. To get there, the court relied on the Guidelines's commentary, which explicitly states that a controlled substance offense "include[s] 'the offenses of aiding and abetting, conspiring, and attempting to commit such offenses.'" *Id.* at 866 (quoting U.S.S.G. § 4B1.2 cmt. n.1). And reliance on the commentary was necessary to the result in *Evans*. *Id.* at 868; *cf. United States v. McMurray*, 653 F.3d 367, 375 (6th Cir. 2011) (deeming a statement dictum where it "was not necessary to the outcome" of a prior case (quoting *United States v. Turner*, 602 F.3d 778, 786 (6th Cir. 2010))).

Havis argues that the *Evans* court erred when it relied on the commentary because the Guidelines's actual text says nothing about attempt, *see* U.S.S.G. § 4B1.2(b), and the Sentencing Commission cannot add to the text in commentary. But save an en banc decision of this court or an intervening decision of the Supreme Court, we must follow *Evans* nonetheless. *Salmi v. Sec'y*

*of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985); *see also McMurray*, 653 F.3d at 375; *Grundy Mining Co. v. Flynn*, 353 F.3d 467, 479 (6th Cir. 2003) ("We are not free to pick and choose the portions of a prior published decision that we will follow and those that we will disregard. Nor do we enjoy greater latitude in situations where our precedents purportedly are tainted by analytical flaws[.]"). There is no way to grant Havis relief without overruling *Evans*'s reliance on the very same commentary at issue here.

The fact that we are foreclosed from reversing a prior panel does not mean, however, that Havis's challenge to the commentary does not have legs. To understand his challenge to the Sentencing Commission's use of commentary, one must take a closer look at the Commission itself. Back in 1984, Congress created the Commission, a sort of hybrid body that does not fit squarely within any of the three branches of government. *See* 28 U.S.C. § 991. The agency is formally "located" within the judicial branch, but its job is to make policy judgments about criminality by promulgating the Guidelines. *See id.* In *Mistretta v. United States*, 488 U.S. 361 (1989), the Supreme Court undertook the delicate task of explaining why the Commission does not, despite its unique character, exercise both judicial and legislative functions in violation of the separation of powers. *See generally id.* at 380–412. The Court's explanation hinged in part on the limits Congress placed on the Commission's power to promulgate the Guidelines. First, Congress must have a chance to review amendments to the Guidelines's text before they take effect. 28 U.S.C. § 994(a), (p); *Mistretta*, 488 U.S. at 393–94. And second, the Sentencing Commission must comply with the notice-and-comment requirements in the Administrative Procedure Act. 28 U.S.C. § 994(x); *Mistretta*, 488 U.S. at 394. Without these limits, the Court explained that the Commission might be said to possess "the power of judging joined with the legislative," *Mistretta*, 488 U.S. at 394 (quoting The Federalist No. 47, at 326 (James Madison) (J. Cooke ed., 1961)), thereby compromising the ability of the branches to check one another's power—"the greatest security against tyranny," *id.* at 381 (citing The Federalist No. 51, at 349 (James Madison) (J. Cooke ed., 1961)). But with these limits in place, the Court ruled that the Commission, although something of an odd duck, was constitutional.

A problem thus arises when the Commission bypasses these procedures by adding offenses to the Guidelines through commentary rather than through an amendment. Unlike the

*text* of the Guidelines, the Commission does not have to give Congress a chance to review commentary it publishes along with the Guidelines's text, nor must the Commission float commentary through notice and comment. *See Stinson v. United States*, 508 U.S. 36, 40–41 (1993); *United States v. Rollins*, 836 F.3d 737, 742–43 (7th Cir. 2016) (en banc). As such, the Commission may only use commentary to *interpret* the text that is already there. *Stinson*, 508 U.S. at 42–43, 47. And a comment that increases the range of conduct that the Guidelines cover has clearly taken things a step beyond interpretation. *See United States v. Winstead*, 890 F.3d 1082, 1090–91 (D.C. Cir. 2018); *Rollins*, 836 F.3d at 742.[1] Indeed, when Congress wants to criminalize the *attempt* to commit a certain crime that is already defined in the code, it does so explicitly in the code itself. *E.g.*, 21 U.S.C. § 846. Thus, in Havis's view, the Commission should have taken the same approach here and amended the Guidelines.

As *Mistretta* taught, these procedural requirements are one piece of a larger puzzle. If the Commission can add to or amend the Guidelines solely through commentary, then it possesses a great deal more legislative power than *Mistretta* envisioned. This means that in order to keep the Sentencing Commission in its proper constitutional position—whatever that is exactly—courts must keep Guidelines text and Guidelines commentary, which are two different vehicles, in their respective lanes. *See, e.g.*, *Winstead*, 890 F.3d at 1092; *Rollins*, 836 F.3d at 742; *United States v. Soto-Rivera*, 811 F.3d 53, 60 (1st Cir. 2016).

Moreover, the now-advisory nature of the Guidelines does not render the limits on the Commission's rulemaking power any less important. *See United States v. Booker*, 543 U.S. 220, 245 (2005) (rendering the Guidelines "effectively advisory"). Even in light of *Booker*, the Commission must continue to obey its authorizing statute. 28 U.S.C. § 994(p), (x). And allowing the Commission to add to the Guidelines through commentary still poses a separation-of-powers problem. *See Beckles v. United States*, 137 S. Ct. 886, 895–96 (2017) (emphasizing that the advisory Guidelines are not "immune from constitutional scrutiny").

---

[1]Deferring to the Sentencing Commission's commentary insofar as it interprets the Guidelines's text follows from the principle that courts should defer to agencies' interpretations of their own regulations. *Stinson*, 508 U.S. at 45 (citing *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)); *see Auer v. Robbins*, 519 U.S. 452, 461 (1997). But insofar as commentary adds to, rather than interprets, the Guidelines's text, *Auer* does not mandate deference.

Though advisory, the Guidelines and their commentary remain the "lodestone" of federal sentencing. *Peugh v. United States*, 569 U.S. 530, 541–44 (2013). A district court must calculate a defendant's Guidelines range correctly, and in doing so, account for all applicable commentary. *Gall v. United States*, 552 U.S. 38, 49 (2007); *Stinson*, 508 U.S. at 42–43, 47. The court must then consider the Guidelines range in formulating a sentence and ensure that any deviation from the range "is sufficiently compelling." 18 U.S.C. § 3553(a)(4); *Gall*, 552 U.S. at 50. On appeal, reviewing courts are at liberty to afford a within-Guidelines sentence a presumption of reasonableness, which this circuit does. *Gall*, 552 U.S. at 51; *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc). And appellate courts can reverse a sentence outside the Guidelines only if they conclude that any deviation was unreasonable. *Gall*, 552 U.S. at 51. So just as a runner's starting position influences the time in which he finishes the race, a defendant's sentence depends in part on what the Guidelines range is, even if that range is nonbinding. *See Peugh*, 569 U.S. at 542. As a result, the Commission's Guidelines continue to have a marked effect on sentencing, and the Commission needs to present changes to Congress and send them through notice and comment before courts apply them. Havis's argument may thus warrant revisiting *Evans*. *Winstead*, 890 F.3d at 1090–92 (holding that the Commission was without power to add attempts of controlled substance offenses to § 4B1.2(b) by way of commentary).

## B.

Havis also argues that Tennessee drug delivery is overbroad because it permits a conviction for a specific type of conduct: offering to sell drugs. *Evans* disposes of this argument, too. There, the court held that a conviction for "an offer to sell is properly considered an attempt to transfer a controlled substance, which is a 'controlled substance offense' under the Guidelines." *Evans*, 699 F.3d at 867 (citing U.S.S.G. § 4B1.2 cmt. n.1). Havis acknowledges *Evans*, but his only effort to distinguish it is to point again to his arguments in this appeal that the definition of "controlled substance offense" should not include attempts. Maybe, but as explained above, *Evans* held that the definition of "controlled substance offense" *does* include attempts, and that decision binds us no matter the new arguments that Havis raises in this case. *Grundy Mining Co.*, 353 F.3d at 479. So Havis's challenge on this front must also fail.

C.

Havis next argues that even if an attempt could be a controlled substance offense, the Tennessee definition of attempt does not match up with the federal one. Both definitions require that a defendant take a "substantial step" toward the commission of an offense. *Evans*, 699 F.3d at 867; *State v. Reeves*, 916 S.W.2d 909, 912 (Tenn. 1996) (quoting Tenn. Code Ann. § 39-12-101(a)(3)). But according to Havis, what constitutes a "substantial step" is different under Tennessee and federal law.

Key to Havis's argument is the Tennessee Supreme Court's decision in *State v. Reeves*. In *Reeves*, the court interpreted a new statute that redefined the state's law of attempt. *See* 916 S.W.2d at 910–12. Under Tennessee's old approach, courts decided if an action was "mere preparation," on the one hand, or a post-preparation "overt act," on the other. *Id.* at 911. Courts took a "narrow" view toward the latter category, resulting in very few actions amounting to an "overt act." *Id.* By statute, however, Tennessee broadened attempt liability through the adoption of the "substantial step" test. *Id.* at 911–13; *see* Tenn. Code Ann. § 39-12-101(a)(3). Under this new test, conduct amounts to a substantial step, and therefore an attempt, where the conduct is "*strongly corroborative* of the actor's overall criminal purpose." *Reeves*, 916 S.W.2d at 914 (emphasis added).

Based on *Reeves*, Havis argues that Tennessee's substantial-step test captures more conduct than that required under federal law for two reasons. First, he suggests that a "merely preparatory" action can constitute an attempt under Tennessee law but not under federal law. But this argument misreads *Reeves*. Havis is right that Tennessee's substantial-step test captures conduct that might not have been an "overt act" under the state's old approach. *See id.* at 913–14. But this does not mean that Tennessee now criminalizes conduct that is *merely* preparatory; rather, preparatory conduct must amount to a substantial step, which must be "strongly corroborative of the actor's overall criminal purpose." *Id.*; *see* Tenn. Code Ann. § 39-12-101 cmt. of the Tenn. Sentencing Comm'n ("[T]he point of attempt responsibility, *beyond mere preparation* but short of the completed offense, is reached when an individual's intentional acts constitute a 'substantial step . . . .'" (emphasis added)); *accord United States v. Bell*, 575 F. App'x 598, 605 (6th Cir. 2014), *cert. granted, judgment vacated on other grounds*, 135 S. Ct.

2934 (2015) (mem.).  And so while preparatory conduct can amount to an attempt in Tennessee, that conduct must still be a substantial step, just as under federal law.

Next, Havis takes issue with the line at which conduct becomes a substantial step under Tennessee and federal law.  Tennessee requires conduct that is "*strongly* corroborative" of a defendant's criminal purpose.  *Reeves*, 916 S.W.2d at 914 (emphasis added).  But Havis reads federal law to require conduct that "*unequivocally* corroborate[s]" a defendant's criminal purpose.  *See United States v. Pennyman*, 889 F.2d 104, 106 (6th Cir. 1989) (emphasis added) (quoting *United States v. Pennell*, 737 F.2d 521, 525 (6th Cir. 1984)).  Thus, because conduct might be strongly corroborative, but not unequivocally so, Havis concludes that Tennessee attempt criminalizes more conduct than federal law does.

Even if Havis's characterization of federal law is correct,[2] it is not enough to show a mismatch.  Under the categorical approach, there must be a "realistic probability, not a theoretical possibility," that a state statute is overbroad.  *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).  So when a defendant believes he has found a mismatch, he must point to a case—whether his own or another—to show a realistic probability that he is right.  *Duenas-Alvarez*, 549 U.S. at 193; *see, e.g.*, *United States v. Smith*, 881 F.3d 954, 958–59 (6th Cir. 2018); *United States v. Harris*, 853 F.3d 318, 322 (6th Cir. 2017).

---

[2]Havis relies on three of our cases and two Ninth Circuit cases for the unequivocal-corroboration requirement.  *See United States v. Garcia-Jimenez*, 807 F.3d 1079, 1088 (9th Cir. 2015); *United States v. Gonzalez-Monterroso*, 745 F.3d 1237, 1243 (9th Cir. 2014); *United States v. Castanon-Campos*, 519 F. App'x 403, 406–07 (6th Cir. 2013); *United States v. Bilderbeck*, 163 F.3d 971, 975 (6th Cir. 1999); *Pennyman*, 889 F.2d at 106.  But our cases are less than consistent on this point.  *Bilderbeck*, 163 F.3d at 975–76 (indicating that corroboration need be unequivocal at one point, but at four others that corroboration need only be strong); *see United States v. Burns*, 298 F.3d 523, 539 (6th Cir. 2002) (defining a substantial step as "conduct strongly corroborative of the firmness of the defendant's criminal intent" (quoting *Bilderbeck*, 163 F.3d at 975)); *see also* Sixth Cir. Pattern Jury Instr. 5.01(1)(C) (2017) (requiring only "strong[]" corroboration).  In addition, our decisions do not address what "attempt" means for purposes of a controlled substance offense under the Guidelines.  *Compare, e.g.*, *Pennyman*, 889 F.2d at 106, *with, e.g.*, *United States v. Gorny*, 655 F. App'x 920, 925–26 & n.7 (3d Cir. 2016) (holding that generic federal attempt under the Guidelines requires only strong corroboration, and rejecting the argument Havis raises here), *cert. denied*, 137 S. Ct. 2107 (2017).  Moreover, the Ninth Circuit's decisions—including the court's imposition of a novel "probable desistance" requirement, *Garcia-Jimenez*, 807 F.3d at 1088—do not bind us.  And those decisions appear to conflict with other Ninth Circuit decisions and diverge from other circuits' treatment of the substantial-step requirement.  *Gorny*, 655 F. App'x at 925–26 & n.7 (citing *Hernandez–Cruz v. Holder*, 651 F.3d 1094, 1102 (9th Cir. 2011)).  But in the end, even if Havis could surmount these issues, his argument still fails.

In the abstract, one could imagine a scenario in which a defendant's conduct strongly, but not unequivocally, demonstrates a criminal purpose. But Havis leaves us to our imaginations. He has identified no case—his own or any other in Tennessee—in which Tennessee has imposed attempt liability where federal law would not.[3] And he needed to. At least three other courts of appeals have rejected similar challenges on the same basis. *United States v. Alexander*, 809 F.3d 1029, 1033 (8th Cir. 2016) (rejecting categorical challenge to Missouri's attempt statute based on lack of case law construing attempt overinclusively), *cert. denied*, 137 S. Ct. 1608 (2017); *United States v. Garcia-Figueroa*, 753 F.3d 179, 186–90 (5th Cir. 2014) (same, for Florida attempt); *United States v. Saavedra-Velazquez*, 578 F.3d 1103, 1107–10 (9th Cir. 2009) (same, for California attempt). We see no reason to decide this case differently. If the text of Tennessee's attempt statute was plainly overbroad, that would be a different matter. *United States v. Lara*, 590 F. App'x 574, 584 (6th Cir. 2014) (declining to require state-court cases where the "plain meaning of the statute" demonstrated overbreadth); *see also Swaby v. Yates*, 847 F.3d 62, 66 (1st Cir. 2017); *United States v. Titties*, 852 F.3d 1257, 1274–75 (10th Cir. 2017); *Ramos v. U.S. Att'y Gen.*, 709 F.3d 1066, 1071–72 (11th Cir. 2013); *United States v. Grisel*, 488 F.3d 844, 850 (9th Cir. 2007).

But Tennessee's statute requires a "substantial step," and Havis's argument relies on a hypothetical application of two interpretations of the term that he believes are variant. Without more, Havis's argument comes up short.

## D.

On to Havis's final argument. As Havis points out, "dispensing" a drug is a controlled substance offense under the Guidelines. U.S.S.G. § 4B1.2(b). And under federal law, one can "dispense" a drug by "administering" it, but only in certain circumstances. 21 U.S.C. § 802(10). Now recall that Havis's state conviction was for delivering a controlled substance. Tenn. Code

---

[3]*Reeves* itself will not do. There, two students set out to poison their teacher but were caught leaning over her desk with the poison before they could complete the act. 916 S.W.2d at 910. No doubt this conduct unequivocally corroborates their intended criminal purpose. And in *State v. Fowler*, 3 S.W.3d 910 (Tenn. 1999), the defendant wrote a $200 check to an undercover officer for the stated purpose of "hav[ing] 'straight sex'" with a male standing next to the officer who the defendant believed to be underage. *Id.* at 911–13. There the defendant's conduct unequivocally corroborated his intention to engage in statutory rape.

Ann. § 39-17-417(a)(2). Havis argues that under Tennessee law, delivery encompasses *any* act of administering a drug, such that someone could be convicted of delivering a drug by administering it in Tennessee in a manner that would not constitute "dispensing" under the Guidelines.

Havis articulates a plausible theory that the Tennessee statute covers a broader range of conduct than the Guidelines. But again, he does not show that it could realistically occur. First, the plain text of Tennessee's statute does not command Havis's interpretation. *Cf. Lara*, 590 F. App'x at 584. Havis would have us infer that delivery under Tennessee law includes any type of administering a drug. He suggests that we draw this inference from Tennessee's definition of "distribute," which is "to deliver *other than by administering* or dispensing a controlled substance." Tenn. Code. Ann. § 39-17-402(9) (emphasis added). So, Havis reasons, if one can deliver drugs *other than by administering* them (at least in the context of distributing), delivery must be the broader genus of administering's species. But Havis does not find much support for this argument in Tennessee's separate definitions of "deliver" and "administer." If every act of administering was a delivery, one would expect some sort of reference to administering in Tennessee's definition of "deliver" or some reference to delivery in Tennessee's separate definition of "administer." There is none. *Id.* § 39-17-402(1), (6). And even if delivery includes *some* administering, Havis also fails to explain why we would not read Tennessee's definition of "deliver" to include administering drugs only to the extent specified in Tennessee's definition of "dispense" (which happens to match that under federal law). *Id.* § 39-17-402(6)–(7); 21 U.S.C. § 802(10); *see United States v. Stauffer Chem. Co.*, 684 F.2d 1174, 1186 (6th Cir. 1982) ("Different portions of the same statute should be read and interpreted consistently with each other, avoiding conflicts.").

Second, Havis cites no cases showing that Tennessee actually charges delivery based on administering a drug in a manner that would not constitute dispensing it. *Smith*, 881 F.3d at 958–59; *see Duenas-Alvarez*, 549 U.S. at 193. And here again, several other circuits have rejected similar challenges on the same grounds. *United States v. Burgos-Ortega*, 777 F.3d 1047, 1052–55 (9th Cir. 2015) (rejecting a near-identical challenge in which the defendant failed to identify a case in which the state prosecuted someone for administering a drug); *United States*

*v. Teran-Salas*, 767 F.3d 453, 458–62 (5th Cir. 2014) (same); *see also United States v. Maldonado*, 864 F.3d 893, 899–900 (8th Cir. 2017), *cert. denied*, 138 S. Ct. 702 (2018); *United States v. White*, 837 F.3d 1225, 1230 (11th Cir. 2016).   Thus, Havis's final argument is unavailing.

\*      \*      \*

Since we are bound to reject those of Havis's arguments that our decision in *United States v. Evans* forecloses, and his other arguments are unpersuasive, we conclude that delivering drugs in violation of Tennessee law is a controlled substance offense under § 4B1.2 of the Sentencing Guidelines.   The district court's decision is therefore AFFIRMED.

---

**CONCURRENCE**

---

JANE B. STRANCH, Circuit Judge, concurring. I concur in the lead opinion. There we explain how Congress created the Sentencing Commission and set the constitutional limits that govern the exercise of its powers. (Lead Op. at 4) We note that by attempting to add offenses to the Guidelines through commentary rather than by amendment, the Commission changed lanes inappropriately, driving in the interpretive lane of commentary when it was bound to proceed in the notice and comment lane of amendment. (*Id.* at 4-6) Havis's argument thus warrants revisiting en banc our published precedent, *United States v. Evans*, 699 F.3d 858 (6th Cir. 2012). *See United States v. Winstead*, 890 F.3d 1082, 1090–91 (D.C. Cir. 2018).

I write separately to explain why *Auer* deference presents no constitutional problem. *See Auer v. Robbins*, 519 U.S. 452, 461 (1997). As we note here (Lead Op. at 4, 5), *Mistretta* made clear that the Sentencing Commission is not at odds with the principle of separation of powers because Congress may delegate complex matters to coordinate Branches as long as it "clearly delineates the general policy," the agency to apply it, and sets "the boundaries of this delegated authority." *Mistretta v. United States*, 109 S. Ct. 647, 655 (1989) (internal quotation marks and citation omitted). We also reference *Stinson v. United States*, 113 S. Ct. 1913 (1993), which established that commentary promulgated by the Sentencing Commission is authoritative "unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Id.* at 1915. Supreme Court authority thus established the boundaries of deference. Violation of these boundaries resulted in our acknowledgement that the Sentencing Commission may not escape its statutory mandate, which requires that new Guidelines be adopted through notice and comment rulemaking, subject to Congressional review. *See* 28 U.S.C. § 994(a), (p), (x).

It is true that the Government asked us to defer to Commission commentary instead, but its request is not evidence that *Auer*, *Mistretta*, and *Stinson* create some irreparable problem. We can hardly fault the Government for advancing an argument that seeks to enhance its position. That is the job of attorneys who represent parties in litigation. Instead of creating a

constitutional problem, the Government's argument mobilized a constitutional principle that *Auer* deference anticipates: regardless of what interpretation the Government proposes, "it is the court that ultimately decides whether a given regulation means what the agency says." *Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1208 n. 4 (2015).

Nor does it appear to me that immense power has been granted to agencies pursuant to *Auer*. Agencies do not get to decide within a vacuum: they operate within a complex system of checks and balances. To begin with, agency power is derivative of the statutory grant that creates the entity and defines the scope of its power. Our deference doctrines are thus an application of the authority that the legislature chose to grant in particular circumstances. And while the scope of the granted authority may be broad, it operates within specified limits. An agency's rulemaking must comply with the statute, and the agency's interpretation must comply with the rule. It is the courts that ultimately determine whether the agency has acted within the scope of its statutory grant. *City of Arlington, Tex. v. F.C.C.*, 133 S. Ct. 1863, 1874 (2013) ("Where Congress has established a clear line, the agency cannot go beyond it; and where Congress has established an ambiguous line, the agency can go no further than the ambiguity will fairly allow."). *Perez* also reminds us that not only do agency statutes often contain their own safe-harbor or other limiting provisions, but the APA itself "contains a variety of constraints on agency decisionmaking—the arbitrary and capricious standard being among the most notable." 135 S. Ct. at 1209.

Finally, I am perplexed by the argument that *Auer* has led agencies to regulate in a way that is broad and vague with, apparently, the goal of creating maximum leeway to define the meaning of a regulation somewhere down the road. That claim assumes a world of political continuity and agency longevity that we would be hard pressed to find today. It also ignores multiple incentives and constraints. Consider the internal pressures within the agency and throughout the governing executive branch to implement the agency's program and the external pressures from those regulated and their lobbyists to obtain predictability, both of which encourage clear regulations. These stakeholders are focused on bringing their own expertise to bear on highly complex, policy-driven issues that play out on a very practical level. This argument relies on one more dubious assumption—that agency action is driven by the views of

the courts on *Auer* deference. It seems to me that the immediate pressures listed above are far more salient. Research supports this conclusion. One recent study showed that barely half of agency drafters responding to a survey even knew what *Auer* was, and even fewer considered it when drafting rules. Christopher J. Walker, *Inside Agency Statutory Interpretation*, 67 Stan. L. Rev. 999, 1062 (2015).

Since the 1930s, courts have recognized "that in our increasingly complex society, replete with ever changing and more technical problems," Congress must be able to delegate power "according to common sense and the inherent necessities of the government co-ordination." *Mistretta*, 109 S. Ct. at 655. The Supreme Court has long recognized the need for some level of judicial deference to the agencies that, guided by empirical research and experience, focus on mastery of a particular set of complex issues. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 104 S. Ct. 2778, 2793 (1984) (noting the environmental "regulatory scheme is technical and complex" and "Judges are not experts in the field"). The current arguments for curtailing agency deference risk dismissing a system that Congress created out of a need to employ the significant expertise held by agencies and their stakeholders in complex areas of the law and instead substituting courts that are ill-equipped for the task. Our carefully developed doctrines of deference strike the proper balance among our three branches by respecting both the exercise of legislative authority and the judiciary's right to make the ultimate decision "whether a given regulation means what the agency says." *Perez*, 135 S. Ct. at 1208 n. 4.

Returning to this case. Though we write separately, the judges on this panel agree that the Sentencing Commission exceeded its rulemaking power by seeking to add offenses to the Guidelines through commentary rather than through the procedures for amendment. And we agree that our prior published decision in *Evans* was incorrect on that issue. The dissent makes a fair argument that we may put aside *Evans* and take up the issue in the first instance. That is a close call, but I end up with the analysis in the lead opinion.

The lesson here is that the existing system works. This case provides no reason to question the wisdom of our longstanding deference to agencies' interpretations of their own rules. It does, however, provide good reason to support en banc review of *Evans*.

————————————

**CONCURRENCE**

————————————

THAPAR, Circuit Judge, concurring.　If there was ever a case to question deference to administrative agencies under *Auer v. Robbins*, 519 U.S. 452 (1997), or more specifically to the Sentencing Commission under the *Auer*-like *Stinson v. United States*, 508 U.S. 36 (1993), this is it.　I write separately to explain why.

In this case, the government asks us to defer to Sentencing Commission commentary. And that commentary expands what is in the Sentencing Guidelines—completed controlled substance offenses—to include something not in the Guidelines—attempts of those offenses. *See* U.S. Sentencing Guidelines Manual § 4B1.2(b) & cmt. n.1 (U.S. Sentencing Comm'n 2016). Under *Auer*, courts must defer to agencies' interpretations of their own rules—including the Commission's interpretation of the Guidelines.　*Auer*, 519 U.S. at 461; *see Stinson*, 508 U.S. at 44–45 (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)).　But one does not "interpret" a text by adding to it.　Interpreting a menu of "hot dogs, hamburgers, and bratwursts" to include pizza is nonsense.　Nevertheless, that is effectively what the government argues here when it says that we must apply deference to a comment adding to rather than interpreting the Guidelines.

The government's argument shows how far *Auer* has come and will go if left unchecked by the courts.　Under *Auer*, agencies possess immense power.　Rather than simply enacting rules with the force of law, agencies get to decide what those rules mean, too.　But just as a pitcher cannot call his own balls and strikes, an agency cannot trespass upon the court's province to "say what the law is."　*Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803).　*Auer* nevertheless invites agencies into that province, with courts standing by as agencies "say what the law is" for themselves.　*Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1215–22 (2015) (Thomas, J., concurring in the judgment).　Not only that, but *Auer* incentivizes agencies to regulate "broadly and vaguely" and later interpret those regulations self-servingly, all at the expense of the regulated.　*Id.* at 1212–13 (Scalia, J., concurring in the judgment); *see also Sessions v. Dimaya*, 138 S. Ct. 1204, 1223 (2018) (Gorsuch, J., concurring in part and concurring in the judgment)

("Vague laws invite arbitrary power."). *Auer* thus encourages agencies to change the rules of the game with the benefit of hindsight, "unhampered by notice-and-comment procedures." *Perez*, 135 S. Ct. at 1212 (Scalia, J., concurring in the judgment).

Were this a civil case, these problems with *Auer* deference would merit close attention. But as this is a criminal case, and applying *Auer* would extend Havis's time in prison, alarm bells should be going off. The whole point of separating the federal government's powers in the first place was to protect individual liberty. The Federalist No. 47, at 324 (James Madison) (J. Cooke ed., 1961) (articulating why "the preservation of liberty requires[] that the three great departments of power should be separate and distinct"); *see also* Baron de Montesquieu, *Spirit of the Laws* 199 (T. Evans ed., 1777) (1978) ("[T]here is no liberty if the judicia[l] power be not separated from the legislative and executive."). Applying *Auer* here, however, would both transfer the judiciary's power to say what the law is to the Commission and deprive the judiciary of its ability to check the Commission's exercise of power. *See Perez*, 135 S. Ct. at 1217–21 (Thomas, J., concurring in the judgment). The result: a greater restriction of Havis's liberty. It is one thing to let the Commission, despite its "unusual" character, promulgate Guidelines that influence how long defendants remain in prison. *Mistretta v. United States*, 488 U.S. 361, 412 (1989) (declaring the Sentencing Commission constitutional); *but see id.* at 413–27 (Scalia, J., dissenting) (questioning the constitutionality of the Commission). It is entirely another to let the Commission interpret the Guidelines on the fly and without notice and comment—one of the limits that the Supreme Court relied on in finding the Commission constitutional in the first place. *See id.* at 393–94; *see also Stinson*, 508 U.S. at 46.

Also, in criminal cases, ambiguity typically favors the defendant. If there is reasonable doubt, no conviction. *In re Winship*, 397 U.S. 358, 364 (1970). And if a statute is ambiguous, courts construe the statute in the criminal defendant's favor. *E.g.*, *United States v. Santos*, 553 U.S. 507, 514 (2008) (describing the "venerable" rule of lenity). But not here. *Auer* would mean that rather than benefiting from any ambiguity in the Guidelines, Havis would face the possibility of more time in prison than he otherwise would. So in this context, *Auer* not only threatens the separation of powers but also endangers fundamental legal precepts as well. *See Carter v. Welles-Bowen Realty, Inc.*, 736 F.3d 722, 732–33 (6th Cir. 2013) (Sutton, J.,

concurring) (highlighting problems with requiring the rule of lenity to bow to *Auer* deference); *see also Perez v. United States*, 885 F.3d 984, 990–91 (6th Cir. 2018) (suggesting that the rule of lenity might apply in considering sentencing enhancements under the Armed Career Criminal Act).

The fact that the Sentencing Commission includes thoughtful and respected lawyers, scholars, and judges does not change the court's obligation to exercise its independent judgment when determining what a law (or regulation) means. *Marbury*, 5 U.S. at 177; *see* The Federalist No. 78, at 525 (Alexander Hamilton) (J. Cooke ed., 1961) ("The interpretation of the laws is the proper and peculiar province of the courts."); *see also Perez*, 135 S. Ct. at 1219 (Thomas, J., concurring in the judgment) (noting that the judiciary is "duty bound" to exercise independent judgment when interpreting the law, which includes agency regulations). The government cannot be faulted for arguing for deference. But judges should be faulted for accepting the government's argument. How is it fair in a court of justice for judges to defer to one of the litigants? In essence, the argument boils down to this—the government is populated by experts and when they speak we should tip the scales of justice in their favor. Such deference is found nowhere in the Constitution—the document to which judges take an oath.[1] And allowing such deference would allow the same agency to make the rules and interpret the rules. As noted above, this is contrary to any notion the founders had of separation of powers. *See Stern v. Marshall*, 564 U.S. 462, 483 (2011) ("Under the basic concept of separation of powers that flows from the scheme of a tripartite government adopted in the Constitution, the judicial Power of the United States can no more be shared with another branch than the Chief Executive, for example, can share with the Judiciary the veto power, or the Congress share with the Judiciary the power to override a Presidential veto." (internal alterations, quotation marks, and citations omitted)). Even Lord Edward Coke rejected such overtures from King James I. *See Prohibitions del Roy*, (1607) 77 Eng. Rep. 1342 (K.B.) (noting that the judiciary had no obligation to defer to the King

---

[1]Another problem with judicial deference is that when judges defer to the government as party and interpreter, we may be violating our judicial canons. *See* Philip Hamburger, *Chevron Bias*, 84 Geo. Wash. L. Rev. 1187, 1248 (2016). Hamburger notes that if judges are predisposed to defer when the government is involved, then that pre-commitment is "systemic bias." *Id.* at 1239, 1247. And that bias violates both the first and third canon of judicial conduct. *See* U.S. Jud. Conduct Code, Canon 1 (requiring an independent judiciary for a just society); *id.* Canon 3 (requiring judges to recuse if a judge has a bias in favor or against a party). If this is so, judges face a dilemma between (1) applying *Auer* and violating the canons or (2) recusing themselves.

on questions of law because no one, not even the King, was above the law). Judges should similarly reject such overtures today.

And while it is true that Congress can provide checks on the agencies, this does not relieve the judiciary from also performing its role. Indeed, the founders envisioned a *combined* system of checks and balances. *See* The Federalist No. 51, at 349 (James Madison) (J. Cooke ed., 1961) (noting that the best security of liberty is a system where "each" branch "may be a check on the other"). But if the judiciary checks out, so to speak, then the system the founders envisioned crumbles.

Fortunately, even under current precedent, this court is not obligated to check out of its constitutional role: the Sentencing Commission's "interpretation" in this case is just an addition and receives no deference. But this case shows how far *Auer* and *Stinson* deference could go if left unchecked. Both precedents deserve renewed and much-needed scrutiny.

—————————

**DISSENT**

—————————

MARTHA CRAIG DAUGHTREY, Circuit Judge, dissenting. I agree with much of what the majority says in its well-reasoned opinion, especially with its call for this court, sitting *en banc*, to consider the soundness of our prior decision in *United States v. Evans*, 699 F.3d 858 (6th Cir. 2012). Nevertheless, because the majority holds that *Evans* mandates that we affirm the judgment of the district court in this matter, I respectfully dissent.

As the majority recognizes, separation-of-powers principles foreclose the possibility that the United States Sentencing Commission, through commentary only, can expand the reach of the *text* of the Sentencing Guidelines. Although Guidelines commentary is binding on us to the extent that it "functions to 'interpret [a] guideline or explain how it is to be applied,'" *Stinson v. United States*, 508 U.S. 36, 42 (1993) (citation omitted) (alteration in original), such commentary is not entitled to controlling weight if "'it is plainly erroneous or inconsistent with' the text of the guideline it interprets." *United States v. Rollins*, 836 F.3d 737, 742 (7th Cir. 2016) (*en banc*) (quoting *Stinson*, 508 U.S. at 45).

In *Evans*, we simply assumed that the commentary to § 4B1.2 of the Guidelines could expand the definition of "controlled substance offenses" to include attempts to commit those crimes. Such *assumptions*, however, are not binding on us in future cases—such as this one— that raise the issue directly. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 63 n.4 (1989); *Staley v. Jones*, 239 F.3d 769, 776 (6th Cir. 2001). Consequently, I would proceed to address the issue brought before us by Havis—without reference to *Evans*. In doing so, I would hold that the district court erred in increasing Havis's base offense level based upon its belief that the commentary to § 4B1.2 appropriately includes attempted crimes in the Guidelines definition of controlled substance offenses. As the Court of Appeals for the District of Columbia recently noted in *United States v. Winstead*, 890 F.3d 1082, 1092 (D.C. Cir. 2018), "If the Commission wishes to expand the definition of 'controlled substance offenses' to include attempts, it may seek to amend the language of the guidelines by submitting the change for congressional review." Short of doing so, however, it may not "invoke its general interpretive authority via

commentary . . . to impose such a massive impact on a defendant with no grounding in the guidelines themselves." *Id.* (footnote omitted).

Although *Evans* reached a contrary conclusion, that prior decision from our court did not cite *Stinson* or consider whether *Stinson* or separation-of-powers principles would allow commentary to expand the class of crimes deemed "controlled substance offenses." Because that underlying issue was not addressed in *Evans*, I am convinced that we now can consider it in the first instance. I thus respectfully dissent from the majority's conclusion that *Evans* mandates affirmance of the district court's judgment, and I would remand this case for resentencing because of the improper expansion of the class of crimes that can be considered controlled substance offenses.